375 So.2d 270 (1979)
Ex parte Wayne Eugene RITTER.
(In re Wayne Eugene Ritter v. State of Alabama)
77-798.
Supreme Court of Alabama.
July 6, 1979.
Rehearing Denied September 7, 1979.
*272 John L. Carroll, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and Jack M. Curtis, Asst. Atty. Gen., for the State, respondent.
FAULKNER, Justice.
This appeal comes to this Court on certiorari for the second time. Previously we remanded to the Court of Criminal Appeals for that court to consider whether or not the felony-murder doctrine was used to supply the requisite intent under our capital felony statute. Evans and Ritter v. State, 361 So.2d 666 (Ala.1978). On remand that court determined that the felony-murder doctrine was not so used and affirmed Ritter's conviction. Ritter v. State, [MS. Aug. 9, 1978] 375 So.2d 266 (Ala.Crim.App. 1978). For the reasons set out below, we also conclude that the conviction must be affirmed.
*273 Briefly, the facts of this case are as follows: Ritter, along with a companion, John Louis Evans, was charged under the capital felony statute, § 13-11-2(a)(2), Code 1975, with the intentional killing and robbery of Edward Nassar, a Mobile pawn shop owner. Contrary to the repeated advice of his attorney, Ritter entered a plea of guilty to the charge. At arraignment and prior to the entry of his guilty plea Ritter was thoroughly advised of his constitutional rights both by the trial judge and by his attorney in open court. Ritter was continuously asked if he understood what was being said, to which he replied that he did. He was given the opportunity to ask questions about his rights and the trial procedure, but he affirmatively declined to do so. After Ritter entered his guilty plea the trial judge ordered the matter presented to a jury since only a jury may sentence a defendant to death under our capital felony statute. § 13-11-1, et seq., Code 1975. At trial the State presented a prima facie case against Ritter which included his confession. (The testimony of each witness is outlined in the original opinion of the Court of Criminal Appeals, Evans and Ritter v. State, 361 So.2d 654 (Ala.Crim.App.1977). After the State rested, Ritter himself took the stand and detailed the robbery and killing. (His statement is set out in full in the opinion by the Court of Criminal Appeals noted above. 361 So.2d at 660-661.) Although Ritter initially refused to say who fired the shot that killed Nassar, it was apparent at trial from both the State's evidence and the testimony of Evans that it was Evans, not Ritter, who actually fired the fatal shot. In this regard Ritter testified that his gun was loaded and that he would have killed Nassar if he had had an opportunity, but "John [Evans] was in my line of fire ... I was there in case he missed." Ritter further stated, "We knew we might have to kill somebody during any robbery. We had discussed it before. If anybody went for a gun, that's what was going to happen. We did kill him, so, really, the only thing you can come back with is the death penalty."
Following closing arguments the trial judge charged the jury. No objections were made to the charge. The jury found Ritter "guilty as charged in the indictment" and fixed his punishment at death by electrocution. The trial judge subsequently conducted a sentencing hearing as required by §§ 13-11-3 and 13-11-4, Code 1975, and entered findings of fact regarding the aggravating and mitigating circumstances listed in §§ 13-11-6 and 13-11-7, Code 1975. In his findings of fact the trial judge noted that, "... while Mr. Wayne Eugene Ritter was an accomplice in the Capital Felony committed by another person, his participation was not relatively minor, and by Mr. Ritter's own statement, he was prepared to shoot Edward A. Nassar, deceased, but could not fire because his accomplice, John L. Evans, III, was in his line of fire." The trial judge then "accepted" the death penalty as fixed by the jury.
FELONY-MURDER V. ACCOMPLICE LIABILITY
The first issue presented for our consideration is whether or not the jury was allowed to supply the requisite intent under the capital felony statute through the use of the felony-murder doctrine. § 13-11-2(b), Code 1975, specifically states: "Evidence of intent under this section shall not be supplied by the felony-murder doctrine." The felony-murder doctrine provides that when a homicide is committed in the course of or during an attempt to commit certain felonies which are inherently dangerous to life, the intent which must be shown to support a conviction for murder (variously described as malice aforethought, the specific intent to take life, or a willful, deliberate, malicious, and premeditated killing) is supplied by the criminal intent involved in the underlying felony. Under the doctrine it is not necessary that the individual accused of murder should have contemplated, intended, or willed the death of the victim. Hardley v. State, 202 Ala. 24, 79 So. 362 (1918); Kilgore v. State, 74 Ala. 1 (1883); Mitchell v. State, 60 Ala. 26 (1877); Fields v. State, 52 Ala. 348 (1875). Culpability stems instead from the accused's participation in an inherently dangerous felonyone in which he should have known that there *274 was a substantial possibility that someone would be killed. In this state felony-murder is statutorily classified as murder in the first degree, § 13-1-70, Code 1975, a crime punishable by life imprisonment. § 13-1-74, Code 1975.
The felony-murder doctrine has been severely criticized, primarily because in a variety of fact situations it often operates to charge an individual with first degree murder when the accused did not have the required intent for murder or when the homicide was the result of the actions of a third party over whom the accused had little or no control. See e. g. W. LaFave & A. Scott, Criminal Law 545-561 (1972); Comment, The Constitutionality of Imposing the Death Penalty for Felony Murder, 15 Hous.L.Rev. 356, 365-371 (1978); Comment, Constitutional Limitations Upon the Use of Statutory Criminal Presumptions and the Felony-Murder Rule, 46 Miss.L.J. 1921 (1975). The doctrine has been eliminated from the Model Penal Code, which instead provides for a rebuttable presumption of extreme recklessness when a homicide occurs in the course of certain felonies. Model Penal Code § 210.2 (Proposed Official Draft, 1962). See also Model Penal Code § 201.2, Comments, para. 4 at 33 (Tent. Draft No. 9, 1959). The use of the felony-murder doctrine is considered particularly harsh in the capital punishment context, where constitutional safeguards and public attitudes demand that the extreme penalty be meted out only for the most reprehensible crimes. As one commentator has observed, "[T]he death penalty is an untenable sanction for negligent or accidental homicide." 15 Hous.L.Rev. supra at 381. It was, no doubt, this dissatisfaction with the doctrine which led our legislature to prohibit its use in the trial of capital felonies in § 13-11-2(b).
The legislature did, however, indicate that an accomplice in a capital felony could be sentenced to death under our statute, for it included accomplice liability as a factor to be considered during the sentencing hearing under both aggravating circumstances, § 13-11-6(4), and mitigating circumstances, § 13-11-7(4). The significant distinction between use of the felony-murder doctrine and use of accomplice liability in this context is that accomplice liability requires a greater showing of the defendant's individual intent. Under Alabama law, in order to hold an individual as an accomplice the State must prove that he aided and abetted in the crime, terms which "`comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.'" Jones v. State, 174 Ala. 53, 57 So. 31 (1911). As we noted in Jones, key elements of accomplice liability are encouragement or presence "with a view to render aid should it become necessary." When liability is predicated on the latter it is essential that the principal be aware of the accomplice's support and willingness to lend assistance. Jones, supra. Thus an accomplice, while he may not have actually committed the crime by delivering the blow or firing the shot, has sanctioned and facilitated the crime so that his culpability is comparable to that of the principal. In Alabama, as in many states, this premise is statutorily recognized in § 13-9-1 which abolished the old common law distinctions among accessories before the fact, principals in the second degree, and principals in the first degree and provides that "... all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals ...."
From the foregoing it is clear that the felony-murder doctrine was not used in this trial. (Indeed, it was never even mentioned.) Instead Ritter could be convicted and sentenced to death under our capital felony statute as an accomplice in the intentional killing of Nassar. (There was also evidence from which the jury could have found that Ritter, aside from his status as an accomplice, had the particularized intent to kill. Of course, it is not contended that Ritter is not fully liable as a principal for *275 the robbery.) The question then becomes, did the State prove that Ritter was an accomplice to the intentional killing? We think that it did. Through Ritter's confession and again through his voluntary statements at trial the State showed that Ritter and Evans had a prior agreement that anyone who attempted to go for a gun would be killed. This possibility was discussed beforehand and planned for. As Ritter himself stated, the only reason he did not shoot Nassar himself was because Evans was in the way. Clearly Ritter encouraged and supported the killing and was present with Evans' knowledge to render assistance should it become necessary.
The further point is raised in this appeal that the trial judge did not properly charge the jury on the law of accomplices. Apparently at the State's request the trial judge charged, "The law is that anyone who aids or abets in the commission of an offense must be indicted, tried, and punished as if he were the principal." The defendant did not offer any charges or object to the charge as given. Admittedly, the charge was brief and should have preferably included some explanation of the terms "aid" and "abet." Nevertheless, we believe that, for the same reasons stated below in reference to the robbery charge, any error did not adversely affect Ritter's substantial rights and was knowingly waived by Ritter.
Ritter also contends that the death penalty is a disproportionate sentence in light of his involvement in the capital felony and therefore violates the Eighth and Fourteenth Amendments. Ritter attempts to bolster his position by portraying himself as a mere accomplice to the robbery, "a minor participant" in a crime which led to a killing by someone else. The record, however, refutes this description of Ritter's part in the crime at every point. It was Ritter, not Evans, who asked to see a .38 caliber Colt revolver, who began to load it with ammunition he had brought with him specifically for this purpose, and who carried the revolver out of the pawn shop after Nassar was shot. Thus Ritter could not seriously be considered a "minor participant" in the robbery, and, as we have noted above, he was clearly an accomplice to the killing.
With this more accurate description of Ritter's participation in the intentional killing and robbery in mind we must consider whether the death penalty is a disproportionate sentence for an accomplice to the killing. This is a question which has not yet been decided by the United States Supreme Court, although several cases before that Court have raised the issue. See Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Bell v. Ohio, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). In each of these cases the Court reversed on other grounds and did not reach the issue of disproportionality. While we opine that there may be situations where an accomplice's participation is so minor that the death penalty would be constitutionally impermissible, such is not the case here. As the trial judge stated, Ritter's participation was not relatively minor. The Court of Criminal Appeals agreed, and so do we. Ritter stands at the most culpable end of the spectrum of accomplice liability. He is closer to an individual who fires a non-fatal shot in a killing rather than one who waits outside as a lookout. By Ritter's own statement it was mere fortuity which made John Evans the triggerman and not Ritter. Consequently, we see no constitutional infirmity in imposing the death sentence in this case.
THE ROBBERY CHARGE
By way of supplemental brief Ritter asserts that the trial judge committed reversible error by failing to charge the jury on the elements of robbery. In Clements v. State, 370 So.2d 723 (Ala.1979), we noted that an instruction on the elements of robbery must be given when a defendant is charged under § 13-11-2(a)(2), as was Ritter. It is undisputed that no charge explaining robbery was given to the jury here.
Such an omission does not, however, lead to a reversal in this case. Rule 39(k), ARCP, now provides:

*276 "In all cases in which the death penalty has been imposed, upon review of the opinion of the court of criminal appeals on certiorari, the supreme court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner. (Amended 10-2-78, eff. 12-1-78.)"
In the instant case it is abundantly clear that no injury resulted from the trial judge's omission. Under the circumstances, the possibility of any injury to Ritter from the incomplete charge is eliminated by his earlier plea of guilty.
In this regard we note that Ritter's guilty plea was without doubt knowingly and voluntarily entered. Prior to his arraignment Ritter filed a "motion of intent to enter guilty plea" which, among other matters, asserted, "That the defendant has openly and publicly admitted his guilt after being advised of his constitutional rights numerous times, and still admits his guilt as charged in both indictments." At his arraignment Ritter was advised of his rights under both the United States Constitution and state law. Indeed, the colloquy among the trial judge, the attorneys, and Ritter himself was extremely thorough and demonstrates that the trial judge as well as Ritter's attorney made every effort to assure that Ritter understood the benefits of a jury trial which would be forfeited by a plea of guilty. Nevertheless, against the advice of his attorney, Ritter entered a guilty plea to the robbery and intentional killing of Nassar. (He also pled guilty to the robbery of a Radio Shack in Mobile.) The trial judge, however, did not accept the guilty plea but instead set the matter for presentation to a jury. At the trial the State presented its case in considerable detail and showed each of the elements of robbery, all of which were admitted by Ritter on the witness stand. Thus Ritter, after having entered a guilty plea, had the additional benefit of a full jury trial as well.
We also decline to reverse this case on the basis of any omissions in the charge because it is apparent that Ritter knowingly and voluntarily waived any errors in the charge. That such a waiver may take place goes without saying, since defendants are regularly allowed to waive the entire panoply of constitutional rights, as well as those accorded under state law. (In fact, in the present case Ritter waived a challenge to the make-up of the grand and petit juries which had previously been declared unconstitutional by the United States District Court.) Here Ritter voluntarily maintained a course of assisting the State in proving its case, even to the point of telling the jury himself from the witness stand, "the only thing you can come back with is the death penalty." Consequently, we can only conclude that his failure to object to the charge, to present proposed charges, or otherwise to bring any omissions in the charge to the court's attention was a calculated decision on the part of Ritter himself, and not an oversight on the part of his attorney. To grant a reversal now, under these circumstances, on the basis of the charge would be a travesty of justice and would simply invite defendants to ignore errors during a trial in the hopes that, if convicted and reversed on appeal, a second jury would be more lenient.
For the foregoing reasons petitioner's conviction and sentence of death is affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, JONES, ALMON, SHORES and EMBRY, JJ., concur.
BEATTY, J., dissents.
BEATTY, Justice (dissenting):
I adhere to the views expressed in my dissent in Evans v. State, Ala., 361 So.2d 666 (1978).