Appellant was indicted and convicted under Alabama Code § 13A-5-31 (a)(2) (Supp. 1977) for robbery or attempts thereof when the victim is intentionally killed by the defendant. His punishment was fixed at death. The central question before us is whether or not a store employee who was intentionally killed during the commission of a robbery, but who had no money or other property taken from his actual person, constitutes a victim of a robbery for the purpose of Alabama's capital felony provisions.
Appellant and Darryl Travis Watkins entered Eugster's Meat Market in the Powderly area of Birmingham around 10:30 A.M. on November 26, 1980. Both appellant and Watkins were armed with pistols. Mr. L.E. Owens (the owner of the market), his wife, a security guard, three or four butchers and two customers were in the store at that time. As appellant and Watkins came in the front door appellant walked toward the meat counter, knocked the security guard to the floor by striking him with his pistol, took the security guard's pistol away from him and told him to "lay down or I'll kill you." At the same time Watkins pushed Mrs. Owens and jumped up on a counter between the cashier's cage and the meat counter. Watkins ordered everyone to "get down" and to "move it."
Seventy-nine year-old Milton Mayfield, the deceased, was operating a slicing machine located twenty-two feet from the cashier's cage directly in Watkins' line of fire. The deceased's vision was poor and he also had a hearing impairment. When Watkins ordered everyone to "get down" the deceased either could not comprehend Watkins' commands or for some other reason failed to respond. Watkins' then took direct aim and shot the deceased between the eyes. Watkins next held his gun to Mrs. Owens' head and ordered Mr. Owens, who was standing inside the cashier's cage, "to give him all the money." Mr. Owens placed approximately $2,400. in the yellow bag he was handed by Watkins. Appellant and Watkins then fled from the scene by running out the front door.
 I
Omitting the formal parts, the indictment charged the following:
 "The grand jury of said county charge that, before the finding of this indictment, CHASTINE LEE RAINES, alias CHESTINE LEE RAINES, alias MICHAEL RAINES, alias CHESTER *Page 1106 
RAINES, whose name is to the Grand Jury otherwise unknown, did, in the course of committing a theft of Twenty-four Hundred Dollars of the lawful currency of the United States of America, a more particular description and denomination of which is to the Grand Jury otherwise unknown, the property of Milton Mayfield, use force against the person of Milton Mayfield, with intent to overcome his physical resistence or physical power of resistence, while the said CHASTINE LEE RAINES was armed with a deadly weapon, a pistol, and did feloniously take the Twenty-Four Hundred Dollars of the lawful currency of the United States of America, a more particular description and denomination of which is to the Grand Jury otherwise unknown, from Milton Mayfield's person or in his presence, and against his will by violence to his person, or by putting him in such fear as unwillingly to part with the same, and in the course of said robbery, the said CHASTAINE [sic] LEE RAINES did intentionally cause the death of another person, the said Milton Mayfield, by shooting him with a pistol, in violation of § 13A-5-31 (a)(2) of the Alabama Criminal Code, against the peace and dignity of the State of Alabama."
Appellant argues that the State's evidence was insufficient to support his conviction because the deceased, Mr. Mayfield, was not a robbery victim within the meaning of § 13A-5-31 (a)(2). Appellant contends that the deceased cannot be classified as a victim of robbery for purposes of satisfying the statute on two premises: (1) no money was taken from the deceased's person or possession and (2) it was not shown that the deceased had any right to exercise dominion or control over the money.
We agree that for an accused to be guilty of violating § 13A-5-31 (a)(2) the person who is intentionally killed must be the victim of the robbery; however, we cannot say that as a matter of law, the deceased in this case was not a victim of the robbery. It is our opinion that he was a robbery victim.
There is no requirement in establishing a prima facie case of robbery that the property stolen belong to the robbery victim.Montgomery v. State, 169 Ala. 12, 53 So. 991 (1910); Williamsv. State, 387 So.2d 258 (Ala.Cr.App.), cert. denied,387 So.2d 261 (Ala. 1980). There is no material variance between an indictment which charges that the property taken was the personal property of a named individual and proof showing that the property belonged to another or to a corporation. Williams, supra; Hobbie v. State, 365 So.2d 685 (Ala.Cr.App. 1978). It is not necessary that the property be taken from the person or possession of the robbery victim. Mays v. State, 335 So.2d 246
(Ala.Cr.App. 1976).
 This court defined robbery in Johnson v. State, 54 Ala. App. 586, 310 So.2d 509 (1975) as follows:
 "Robbery is defined to be the felonious taking of money or goods of value from the person of another, or in his presence, against his will by violence, or by putting him in fear." [Emphasis added]. 310 So.2d, at 511.
And as was stated by the Alabama Supreme Court in Cobern v.State, 273 Ala. 547, 142 So.2d 869 (1962):
 "Nor, on a charge of robbery, must the stolen property be in the mancupation or on the person of the victim. It is sufficient if the property was taken from the victim's presence or personal protection." [Emphasis added] 142 So.2d at 871.
The money in this case was clearly taken in Mr. Mayfield's presence; the cashier's cage was twenty-two feet away from where he was standing and was in his direct line of vision.
This court considered the issue of who could be considered a robbery victim in Woods v. State, 55 Ala. App. 450,316 So.2d 698 (1975). Factually, we believe Woods to be virtually indistinguishable from the instant case on that issue. For the sake of clarity, we here set out the crucial facts from Woods. *Page 1107 
 "On November 13, 1974, the Center Drug Company, Inc., located at 3704 Governor's Drive, West, in Huntsville, Alabama, was robbed by two young white men. One had a pistol and the other had a knife. The robbery took place around 8:00 o'clock at night and there were only two people in the drugstore when the robbers entered. They were the pharmacist, Mr. Charles L. Johnson, and a salesclerk, Mrs. Cathy Rathbun.
 "Mr. Johnson testified that he was in the prescription department and his attention was attracted to a man with a gun in the back of Mrs. Rathbun marching her around the counter to the prescription department. He saw another young man immediately behind the man with the gun. This man had an open knife in his hand. The man with the gun said this is a holdup and `they would shoot the girl if I didn't do what he said. He said he was an addict and wanted the hard drugs — Demerol, Morphine, Dilaudid and Leritine.' Mr. Johnson got the drugs and gave them to the man with the gun who put them in a box and told Mr. Johnson to unlock the back door. He also picked up a sack of money containing about $200.00 on the counter nearby.
 "After Mr. Johnson unlocked the back door the man with the gun told Mrs. Rathbun, who had been forced to kneel during the robbery, to stand up and act normal or he would shoot Mr. Johnson. Mrs. Rathbun stood up as she was directed. The robbers went out the back door." 316 So.2d, at 699.
Woods claimed there was a fatal variance between the charge in the indictment (that he robbed Mrs. Rathbun) and the proof adduced at trial. Woods argued that Mr. Johnson, who was in charge of the drugstore, was the robbery victim, rather than Mrs. Rathbun who was only a salesgirl. This court, speaking through Judge Harris, wrote the following:
 "As we view the evidence both Mrs. Rathbun and Mr. Johnson were in charge of the drugstore, either as conditional owner, or bailee, or agent. Mr. Johnson was in charge of the prescription department and Mrs. Rathbun was working in the other departments of the store where non-drug items were sold. It was Mrs. Rathbun that appellant put the gun in her back and forced her to march to the prescription department. The robbers threatened to kill both of them if they failed to obey orders. Howell v. State, 26 Ala. App. 612, 164 So. 764.
 "On a charge of robbery it is not necessary that the stolen property be in the manucaption or on the person of the victim. It is sufficient if the property was taken from the victim's presence or personal protection. Cobern v. State, 273 Ala. 547, 142 So.2d 869.
 "In Argo v. State, 42 Ala. App. 454, 168 So.2d 19, this court said:
 "`There was no variance between the averments of the indictment that the money was the personal property of Robert P. Jackson and the proof showing that the money belonged to the State of Alabama.'
 "Argo, supra, involved the robbery of a state liquor store.
 "We hold there was no fatal variance between the averments of the indictment and the proof offered in support thereof."
In considering the facts before us in light of Woods, supra, we find the following similarities: (1) Mr. Mayfield, like the sales clerk, was working in a store he did not own when the robbery occurred; (2) Mr. Mayfield, like the sales clerk, did not have possession of the property that was taken, nor did either one of them hand the money over to the robbers; (3) Both Mr. Mayfield and the sales clerk were threatened with being killed while in their capacities as store employees; (4) Neither Mr. Mayfield's nor the sales clerk's personal belongings were taken in the robberies, (5) Nor was the money taken from an area of the store directly under Mr. Mayfield's control or dominion. Substantively, the only difference in the two cases is that in Woods the robbers only threatened to kill the sales clerk if their instructions were not followed, while in this case Mr. Mayfield was actually killed *Page 1108 
after he was threatened. This distinction hardly makes Mr. Mayfield less a robbery victim than was the sales clerk.
In our judgment this case is controlled by Woods v. State, supra, and we hold that as a matter of law, Mr. Mayfield was a victim of a robbery within the meaning of § 13A-5-31 (a)(2).
 II
We have no difficulty in determining that the victim in this case was "intentionally killed by the defendant" under the thoroughly reasoned principles discussed by our Supreme Court in Ritter v. State, 375 So.2d 270 (Ala. 1979). There can be no question that appellant encouraged and supported Watkins and was present with Watkins' knowledge to render assistance should it become necessary, even though he did not pull the trigger on the weapon that killed the deceased. Clearly there was evidence before the jury which proved that appellant had the necessary "particularized intent to kill." 375 So.2d at 274. The jury was properly charged by the trial court in this regard.
 III
The death penalty provisions under which appellant was convicted are constitutional. Beck v. State, 396 So.2d 645
(Ala. 1981); Willie Clisby, Jr. v. State, (Ala.Cr.App., Ms. 6 Div. 576, March 2, 1982); Jody Lynn Potts v. State,426 So.2d 886 (Ala.Cr.App. 1982).
 IV
The State's delayed disclosure of the lineup sheet information in no way violated the principles enunciated inBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963). Evidence concerning the lineup was fully revealed during the trial through the testimony of the four eyewitnesses who viewed the lineup and through the testimony of Sgt. Wallace who conducted the lineup. A thorough and sifting cross-examination of these witnesses was conducted by appellant. There was simply no suppression of exculpatory evidence like the one condemned in Brady v. Maryland, supra.
Even where there is total nondisclosure of information the test is whether the use of the information at trial would have changed the result by creating a reasonable doubt where one did not otherwise exist. United States v. Agurs, 427 U.S. 97,96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Jones v. State,396 So.2d 140 (Ala.Cr.App. 1981). As the United States Supreme Court stated in Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955,964, 8 L.Ed.2d 98 (1962):
 "`While this Court stands ready to correct violations of constitutional rights, it also holds that it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462
[76 S.Ct. 965, 970, 100 L.Ed. 1331] (1956). This burden has not been met.'"
Appellant has not shown how he was actually harmed or prejudiced in this matter.
 V
There is no requirement in capital cases that a defendant be allowed to question each prospective juror individually during voir dire. Mack v. State, 375 So.2d 476 (Ala.Cr.App. 1978), affirmed, 375 So.2d 504 (Ala. 1979), vacated and remanded onother grounds, 405 So.2d 701 (Ala.Cr.App. 1981). See also Sealsv. State, 282 Ala. 586, 213 So.2d 645 (1968).
 VI
Any conflicts in the identification of appellant were resolved by the jury. Identification of an accused by only one witness is sufficient to establish his guilt. Robinson v.State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151
(Ala. 1980). A verdict rendered on conflicting identification testimony should not be disturbed on appeal. Howell v. State,369 So.2d 297 (Ala.Cr.App.), cert. denied, 369 So.2d 303 (Ala. 1978). *Page 1109 
 VII
At the conclusion of the "guilt-finding phase" of appellant's trial, the jury returning its verdict finding appellant "guilty as charged in the indictment," the trial court conducted the "sentence-determining phase" of appellant's trial. This was done in accordance with Beck, supra.
During the "sentence-determining phase" of the trial the State presented evidence that appellant had been convicted of first degree murder and sentenced to life imprisonment on September 19, 1968. Appellant was properly allowed to introduce any matter relating to any mitigating circumstances. Both the prosecution and the defense were given an opportunity to argue for and against, respectively, the imposition of the death penalty. The jury was properly instructed concerning the "circumstances of aggravation and of mitigation that should be weighed and weighed against each other. . . ." 396 So.2d at 662. The jury was specifically instructed that it could consider mitigating circumstances other than those listed in the statute, but that consideration of aggravating circumstances must be strictly limited to those defined by statute. The jury unanimously fixed appellant's sentence at death.
The trial court then conducted its separate sentence hearing in accordance with statute and the directions provided in Beck, supra. Following this procedure it was the judgment of the trial court that appellant's sentence remain fixed at death.[1]
On our appellate review of this case we have examined other cases in which the death penalty has been imposed and ascertain that the imposition of the death penalty in this case is not substantially out of line with sentences imposed for other acts.
We have examined the record and transcript of evidence and find no error prejudicial to appellant; therefore, the judgment of conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.
[1] See the appendix to this opinion for the trial court's findings of facts which set forth its basis for the sentence of death.
 APPENDIX
 IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT OF ALABAMA IN AND FOR JEFFERSON COUNTY STATE OF ALABAMA, Case No. 80-00901 Plaintiff, vs. CHASTINE LEE RAINES,[1]
Defendant.
 FINDING OF FACTS
I find as a fact that on November 26, 1980, that Chastaine Lee Raines and Darryl Travis Watkins went inside the Eugster Meat Market at 2833 Park Lawn Avenue, S.W., Birmingham, Alabama, armed with pistols with the express purpose of committing the crime of robbery. A third participant, possibly Benny Ray Jones, was lerking [sic] on the outside.
I find as a fact that Chastaine Lee Raines attacked and disarmed one William Sanders who was acting as security guard in the store for the specific purpose of preventing *Page 1110 
robberies. Now Chastaine Lee Raines disarmed Mr. Sanders, put two guns to his head and ordered him not to move or he would be killed.
I further find that then Darryl Travis Watkins leapt upon the counter within the store, ordered everyone down and when Milton Mayfield either refused or failed to comprehend Mr. Watkins' commands he was shot by Darryl Travis Watkins between the eyes killing him instantly. The robbers then left the store and went unapprehended for some 32 days.
Mr. Raines was placed in a lineup on December 28, 1980, along with six other individuals, and was positively identified by Mary Johnson as being outside the store immediately prior to the robbery and also by William Sanders as being the one who attacked and disarmed him.
I find that at the time of the offense the defendant was 31 years old and of at least average or above average intelligence.
Section 13A-5-35 (2) (The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person;) — I find as an aggravating circumstance that on September 19, 1968, Chastaine Lee Raines was convicted of murder in the first degree and sentenced to life imprisonment.
Although 13A-5-35 (3) and (4) are likely to be present I specifically make no such finding.
Section 13A-5-36. Mitigating circumstances.
(1) The defendant has no significant history of prior criminal activity; I find to the contrary that the defendant has an extensive significant history of criminal activity.
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; I find that there was no evidence of any such extreme mental or emotional disturbance.
(3) Not applicable.
(4) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor; this is a mitigating circumstance argued by the defendant in the penalty phase and I find it not applicable in this case. The participation of the defendant was certainly a major part in the operation and certainly was not minor.
(5) Not applicable.
(6) Not applicable.
(7) The age of the defendant at the time of the crime; the defendant was 31 years old and that is certainly not a mitigating circumstance.
I therefore find 13A-5-35 (2), aggravating circumstance, to be present and I find no mitigating circumstances to be present either enumerated or otherwise. I come to the conclusion that the aggravating circumstances in the case outweigh the mitigating circumstances and the verdict of the jury is and is due to be upheld.
I, therefore, sentence the defendant, Chastaine Lee Raines, to suffer death by electrocution on the 3rd day of October, 1981, and the Sheriff of Jefferson County, Alabama, is directed to deliver the defendant, the said Chastaine Lee Raines, to the custody of the Director of the Department of Corrections and Institutions at Montgomery, Alabama, and the designated executioner shall, at the proper place for the execution of one sentenced to suffer death by electrocution, cause a current of electricity of sufficient intensity to cause death and the application and continuance of such current to pass through the body of said Chastaine Lee Raines until said Chastaine Lee Raines is dead.
Dated this 6th day of July, 1981.
 /s/ Charles R. Crowder
Charles R. Crowder Circuit Judge
[1] While the style of the case carries the name "Chastine," the trial court's order uses the name "Chastaine." *Page 1111