Because many of the questions presented by this appeal have been resolved for all future cases by Act No. 178, Ala. Acts 1981, this opinion has limited application for cases involving persons convicted after July 1, 1981. The facts relevant to this appeal have been set out in detail in the opinion of the Court of Criminal Appeals, Raines v. State, 429 So.2d 1104
(Ala.Cr.App. 1982), and need not be repeated here.
Briefly, defendant was indicted and convicted under Ala. Code 1975, § 13A-5-31 (a)(2) (Supp. 1977), for robbery or attempt thereof when the victim is intentionally killed by the defendant, and, after a separate sentence hearing, defendant was sentenced to death. The robbery was of Eugster's Meat Market in the Powderly area of Birmingham. The victim was seventy-nine-year-old Milton Mayfield, a store employee at Eugster's who was operating a slicing machine at the time of the robbery.
The Court of Criminal Appeals affirmed the conviction and sentence of defendant, holding specifically that: (1) Mr. Mayfield was a victim of the robbery within the meaning of § 13A-5-31 (a)(2); (2) the defendant, even though a nontriggerman, had the "particularized intent to kill" necessary to determine that the victim was "intentionally killed by the defendant"; and (3) the sentence hearing was conducted in accordance with the statute and the guidelines outlined by this Court in Beck v. State, 396 So.2d 645 (Ala. 1980).
The defendant petitioned this Court for a writ of certiorari to the Court of Criminal Appeals, which we granted. We affirm.
At the outset, we hold once again that the death penalty provisions under which defendant was convicted are constitutional. Beck v. State, 396 So.2d 645 (Ala. 1980).
The appellant contends that imposing the death penalty upon a defendant convicted of the capital offense of robbery when the victim is intentionally killed is disproportional to the crime, in violation of the eighth and fourteenth amendments, where the defendant did not actually kill the victim and was convicted solely as an accomplice to the robbery. We disagree.
We have previously held that, while the legislature has prohibited the use of the felony-murder rule to supply the necessary intent in capital felony trials, the accomplice liability doctrine may be used to convict a non-triggerman accomplice if, but only if, the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the underlying felony. Ritter v. State, 375 So.2d 270
(Ala. 1979). An accomplice to the intentional killing is one who aids and abets the killing by any assistance rendered through "acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary." Id. at 274.
The complex appellate history of Ritter since the time of this Court's original opinion has been based on grounds other than those presented for review here, and we hold that it is still the law in this state that a non-triggerman accomplice may be convicted of a capital offense and sentenced to death if the state proves that the defendant was an accomplice to the intentional killing.
We take notice of the United States Supreme Court's recent decision in Enmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368,73 L.Ed.2d 1140 (1982), relied upon by appellant, and find that opinion in no way is inconsistent with our previous holdings inRitter, supra. The Court held in Enmund that the driver of the getaway car could not be convicted of a capital offense where he did not "himself kill, attempt to kill, or intend that akilling take place or that lethal force will be employed."Enmund, supra, 102 S.Ct. at 3376-77 (emphasis supplied). The opinion is entirely consistent with our requirement of proof of a "particularized intent to kill" by the non-triggerman accomplice.
The question remains, therefore, whether the record contains sufficient proof of an *Page 1113 
intent of the defendant to kill. We hold that it does.
Pulling the trigger is only one factor in determining intent to kill. Ritter v. State, 375 So.2d 270, 274-275 (Ala. 1979). From the testimony concerning the defendant's words and actions during the course of the robbery, the jury had sufficient evidence from which to infer that the defendant was prepared to kill, intended to kill, and supported Watkins in his killing of Mr. Mayfield and, thus, that the defendant was an accomplice to the intentional killing of Mr. Mayfield.
To affirm a finding of a "particularized intent to kill," the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill. The Court of Criminal Appeals found in the affirmative on both parts of this two-part test; and, upon careful review of the record, we discern no basis for disturbing that finding.
Defendant next contends that Mr. Mayfield was not a victim of the robbery within the meaning of § 13A-5-31 (a)(2), under which he was convicted. This issue arises because § 13A-5-31 (a)(2) apparently means that if the defendant robs one person but intentionally kills another person, such as a bystander, then the defendant has not committed a capital offense. See Carnes, Alabama's 1981 Capital Punishment Statute, 42 Ala. Law. 456 (July, 1981).[1] It is for us to decide, therefore, whether Mr. Mayfield was a victim of the robbery as opposed to a mere bystander.
Our review of the record and of the opinion of the Court of Criminal Appeals, Raines v. State, 429 So.2d 1104 (Ala.Cr.App. 1982), convinces us that that opinion correctly states the law in this state defining robbery victims, and that it correctly applies that law to the facts of this case, and, therefore, we affirm and adopt that section of the opinion of the Court of Criminal Appeals into the opinion of this Court, thereby holding that, as a matter of law, Mr. Mayfield was a victim of the robbery within the meaning of § 13A-5-31 (a)(2).
Finally, appellant contends that the state's delayed disclosure of lineup information entitled him to a new trial. Again, we do not agree.
The information was put before the jury and, in the words of the trial court, "dealt a jolt" to the state. The information was subject to a "thorough and sifting cross examination," as the Court of Criminal Appeals held. The information was exploited as fully as it could have been, in contrast to the total suppression of exculpatory evidence found in Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Even in the case of total nondisclosure, the information must create a reasonable doubt where one did not otherwise exist.United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392,49 L.Ed.2d 342 (1976). The defendant's burden is to show that reasonable doubt "not as a matter of speculation, but as a demonstrable reality." Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955,964, 8 L.Ed.2d 98 (1962). We agree with the Court of Criminal Appeals that the appellant has failed to show how he was actually harmed by the delayed disclosure of the information. Appellant's argument that the information would have enabled more effective preparation for trial was rejected in UnitedStates v. Agurs, supra, 427 U.S. at 112 n. 20, 96 S.Ct. at 2401
n. 20, on the grounds that an argument could always be made that knowledge of the prosecutor's case, both incriminating and exculpatory, would help defense counsel in preparation of the case for the defense. Therefore, the proper focus is upon the materiality in the nondisclosure or delayed disclosure of exculpatory information in determining the denial *Page 1114 vel non of defendant's rights of due process and fair trial — a showing not made by this defendant.
For the foregoing reasons and also because this Court has found that the sentence hearing complied with all statutory and constitutional requirements, defendant's conviction and sentence of death are affirmed.
AFFIRMED.
All the Justices concur, except EMBRY, J., not sitting.
[1] This loophole has been effectively closed by Act No. 178, Ala. Acts 1981, which makes "[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant" a capital offense. The new statute, therefore, is broad enough to include bystanders.