The appellant was convicted of the capital murder offense of intentional killing during a robbery, in violation of §13A-5-40(a)(2), Code of Alabama (1975). The jury recommended that the appellant be sentenced to life without parole. Thereafter, following a separate sentencing hearing, the trial court sentenced the appellant to life without parole, as recommended by the jury.
 I
The appellant argues that the trial court erred in failing to grant his motion for judgment of acquittal made at the close of the State's case. The appellant admitted that he was guilty of robbery, but denied that he was guilty of the intentional killing of the victim, because he did nothing to aid or abet the trigger man, nor did he have any intention of killing the victim.
The record indicates that the appellant and three accomplices met on the Sunday morning in question and one of the accomplices stated, "Let's go stick something up. Let's go rob something." The four of them left in a Buick Regal to get another automobile, a white Grand Am Pontiac. The appellant and one of the accomplices got into the Pontiac; the accomplice riding with the appellant originally had the gun. The two automobiles stopped at a church, where the gun was swapped from the accomplice in the car with appellant to another accomplice who was driving in the Buick. The appellant and accomplice driving in the Grand Am followed the Buick onto Interstate 65. The Buick passed another car, getting onto the 6th Avenue "off ramp", so that the passed automobile was located in between the Buick and the Grand Am. The accomplice driving the Buick testified that he saw "a lady and her two daughters" in the car. One of the accomplices, who was driving the Buick, testified that he looked in his rear-view mirror and saw that the Grand Am had positioned itself so that it was blocking off the other car. The accomplice who was passenger in the Buick grabbed the pistol. The appellant jumped out of the Grand Am and the passenger-accomplice from the Buick ran back to the car, which they had blocked off, carrying the pistol. The appellant attempted *Page 850 
to open the back door of the car, while a passenger in the back seat tried to stop him from opening the door. Eventually, the appellant got into the car and began "tugging" at a purse. The appellant got the purse, while the accomplice with the gun tried to get into the front door of the driver's side of the automobile, where the victim was sitting and attempting to keep him out. The accomplice who was driving the Buick testified that he began to drive around the corner when he heard a gunshot. He testified that he immediately looked back and saw the accomplice with the gun and the appellant running back toward the Grand Am. He testified that he saw a screwdriver in the appellant's hand and a pistol in the other accomplice's hand. He further testified that the appellant was carrying the purse. The accomplice, driving the Buick, testified that when he went around the corner, something went wrong with the steering column of the Buick and the car cut off. He testified that he believed that, when he and another individual had stolen the Buick on the previous night, they must have damaged the car. That accomplice left the Buick and got into the Grand Am with the others. Thereafter, they drove to a church and stole a station wagon; all of them getting into the station wagon and driving off. They found a purse in the station wagon which they rummaged through. They then left the station wagon and purses in some bushes down by a junk yard. The four men got a ride to another friend's house. Another of the accomplices had the gun at that time. The men decided to sell the gun, so one of the accomplices and a friend left to sell the gun and returned with money, which was divided so that each person got $30 to $35. All four men were charged with capital felony, but the accomplice, who had driven the Buick, agreed to testify for the State and, in return, the charge of capital felony against him was dismissed, as well as some other cases.
The appellant argues that because the State failed to prove that he had any particularized intent to kill or supported the triggerman in the killing of the victim, his conviction for capital murder should be reversed and remanded with instructions to the trial court to enter a judgment of felony murder. However, the State presented sufficient evidence from which the jury could have reasonably inferred that the appellant had the requisite intent to commit the murder.
 "To sustain a conviction under § 13A-5-40(a)(2) for capital murder-robbery, the State must prove beyond a reasonable doubt: (1) a 'robbery in the first degree or an attempt thereof,' as defined by § 13A-8-41, (2) a 'murder' as defined by § 13A-6-2(a)(1), and (3) that the murder was committed 'during' the robbery or attempted robbery, i.e. that the murder was committed 'in the course of or in connection with the commission of, or in immediate flight from the commission of' the robbery or attempted robbery in the first degree. § 13A-5-39(2)."
Connolly v. State, 500 So.2d 57, 62 (Ala.Cr.App. 1985). The appellant concedes that he committed the robbery element of this offense and there is no question that the murder was committed during the commission of, or immediate flight from the commission of the robbery; however, the appellant contends that he did not intentionally kill the victim. The question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. Crowe v. State,435 So.2d 1371, 1379 (Ala.Cr.App. 1983).
 " '[N]o defendant is guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony murder doctrine. Beck v. State, 396 So.2d 645, 662 (Ala. March 6, 1981)'; Carnes, Alabama's 1981 Capital Punishment Statute, 42 Ala. Law. 456, 468 (1981). See also Emmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but see Godbolt v. State, 429 So.2d 1131, 1134 (Ala.Cr.App. 1982), holding that Emmund is inapplicable to a defendant who does not receive the death penalty. However, a non trigger man can be convicted of a capital offense if he was a knowing accomplice to the intentional killing itself. Ritter v. State, 375 So.2d 270 (Ala. 1979). '[T]he *Page 851 
accomplice liability doctrine may be used to convict a non-trigger man accomplice, if, but only if, the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the underlying felony.' Ex parte Raines, 429 So.2d 1111, 1112 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
 "Alabama's 1981 capital punishment statute under which [the defendant] was convicted 'provides that a defendant who does not personally commit the intentional killing which is part of the capital offense is nonetheless guilty of it and can be convicted of the capital offense, if that defendant intentionally promotes or assists in the commission of the intentional killing which is actually done by another.' Carnes, 42 Ala. Law at 471.
 "Our duty on appeal was stated in Raines, 429 So.2d at 1113. 'To affirm a finding of a "particularized intent to kill", the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill.' "
Lewis v. State, 456 So.2d 413, 416-17 (Ala.Cr.App. 1984).
In the present case, there was sufficient evidence from which a rational jury could conclude that the appellant possessed the intent to kill. All of the men had begun this series of events with the intention of committing robberies and in possession of a gun. The gun had been passed between the two cars and, after blocking off the victim, the appellant and the armed accomplice attempted to enter the vehicle from the driver's side. After the shooting, they ran together back to the waiting Grand Am. Moreover, the trial judge charged the jury that the doctrine of felony murder could not be included as a component part of the capital charge. He explained that the jury must find an intentional killing and, at length, explained to the jury what is required in order to find the element of intent. "'Whether a non-trigger man aided and abetted the actual killing itself, such as by being present to render assistance in the killing itself if it becomes necessary, will almost always be a jury question.' 42 Ala. Law at 469. See also Tomlin v. State,443 So.2d 47, 53 (Ala.Cr.App. 1979), affirmed, Ex parte Tomlin,443 So.2d 59, 64 (Ala. 1983)." Lewis v. State, supra, at 418. The trial court did not err in denying the appellant's motion for judgment of acquittal at the close of the State's evidence.
 II
The appellant argues that the trial court erred by allowing the prosecution to use the appellant's statement which reflected other purse snatchings and the theft of automobiles, as well as allowing the State, during its cross-examination of the appellant, to ask about two robberies committed prior to the shooting and one robbery in which the appellant used the same pistol to rob a lady of a necklace.
The record indicates that a motion to suppress was held concerning the appellant's statement. The trial court excluded any statements made concerning the robberies on the night prior to the day of the offense. Thereafter, the trial court asked the State's witness, the officer who took the appellant's statement, to find the mention, in the appellant's statement, of the other crimes. The following transpired on voir dire:
 "THE WITNESS: Rowell stated that Mike, last name unknown, took several ladies' purses at different locations in the vicinity of Sixth Street. After taking the purses, they got on the Interstate. Rowell said he thought they got on the Interstate at Norwood.
 "THE COURT: That's all we need. I don't need that. I've heard the rest of that. He just said one guy took — he didn't say anything about him being there where they took several purses?
 "THE WITNESS: Mike, last name unknown, took several ladies' purses at different locations in the vicinity of 16th Street.
"THE COURT: I'm going to let that in.
 "[DEFENSE COUNSEL]: We object to the court's ruling. *Page 852 
 "THE COURT: Does it even show he was with him at that time? Rowell?
 "THE WITNESS: Said that — Rowell stated Mike took several ladies' purses at different locations in the vicinity.
 "THE COURT: I'm going to let that in. That's all I'm going to let the statement in.
 "[DEFENSE COUNSEL]: Your Honor, we have another objection. Sergeant, correct me, do you not have in the statement that after the shooting that they went to a church and you have some mention then that Rowell got the gun and there was a robbery?
"THE WITNESS: Yes, sir.
 "[DEFENSE COUNSEL]: All right. Now, we would take a position that that other robbery which occurred would not be admissible.
 "THE COURT: I'm going to let that in, that's for sure. That's just a continuing of the res gestae. I'm noting your objection. I'm letting it in.
 "THE WITNESS: It's my understanding, Your Honor, to start at this point, Rowell stated Sunday morning; is that correct?
 "THE COURT: Don't go back into the night before under any circumstances. I'm letting that in about the church. I thought it was already in. Someone went to the church and got a station wagon. Anyway, whether it's in or not, I'm going to let it in."
As noted by the trial court, there was no indication in the appellant's statement that he was a party to the theft of the other ladies' purses. Moreover, these thefts occurred just prior to the instant offense. The appellant's statement indicates that immediately after taking the purses, they drove onto the interstate, where the present offense occurred. The robbery of the station wagon in the church parking lot occurred just after the offense and while escaping from the offense. Therefore, these offenses were admissible as exceptions to the exclusionary rule, in that they were part of the res gestae or continuous transaction of the present offense and were part of a common plan, design, scheme or system.
"Evidence of the accused's commission of another crime is admissible if such other crime is inseparably connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence." C. Gamble, McElroy'sAlabama Evidence (3d ed. 1977), § 69.01(3). See also Orr v.State, 462 So.2d 1013, 1015 (Ala.Cr.App. 1984). "Evidence of other crimes is properly admissible as part of the res gestae if all of the criminal acts are part of one continuous criminal adventure by the same party occurring within a matter of hours.Miller v. State, 405 So.2d 41 (Ala.Crim.App. 1981). See alsoMoseley v. State, 357 So.2d 390 (Ala.Crim.App. 1978); Summersv. State, 348 So.2d 1126 (Ala.Crim.App.), cert. denied,348 So.2d 1136 (Ala. 1977)." Pettaway v. State, 494 So.2d 884, 886
(Ala.Cr.App. 1986). In the present case, this evidence "was intimately connected with the same transaction which is the basis of the State's case. . . . The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge." Blanco v. State, 515 So.2d 115, 120
(Ala.Cr.App. 1987) and cases cited therein. "The trial court did not err in overruling appellant's objection to the admission of such evidence. No matter how many distinct crimes may be involved, all the details of one continuous criminal occurrence or adventure may be given as part of the offense with which the defendant is charged." Coleman v. State,487 So.2d 1380, 1385 (Ala.Cr.App. 1986) and cases cited therein.
Moreover, this evidence of the other offenses was properly admitted as having been part of a common plan, design, scheme or system with the instant offense.
 "Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other *Page 853 
crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope."
C. Gamble, McElroy's Alabama Evidence (3d ed. 1977); § 69.01(6). See Shelton v. State, 521 So.2d 1035, 1037
(Ala.Cr.App. 1987) (in which this court held evidence of a robbery committed on the previous night, in which a car was stolen, was admissible under the common plan or design exception to the exclusionary rule, where the stolen car was used as the getaway vehicle following an attempted robbery). See also Carroll v. State, 440 So.2d 343, 345-46 (Ala.Cr.App. 1983). In the present case, there was testimony that the accomplices, including the appellant, left that morning with the intention of committing robberies. Each of the robberies was perpetrated in advance of this scheme or plan. Clearly, this evidence tended to prove the appellant's guilt, rather than simply to show that he had bad character. See Watson v.State, 398 So.2d 320, 328 (Ala.Cr.App. 1980); Allen v. State,380 So.2d 313 (Ala.Cr.App. 1979).
The appellant further contends that the trial court erred in overruling his objections to the prosecutor's questions of the appellant, during cross-examination, concerning several robberies committed on the morning of the present offense. However, at each instance, the defense counsel made only a general objection, without stating any grounds. Therefore, this matter is not preserved for appellate review. Johnson v. State,526 So.2d 34 (Ala.Cr.App. 1987); Ex parte Weaver, 530 So.2d 258
(Ala. 1988).
 III
The appellant argues that the trial court erred in failing to give his requested jury charge concerning the fact that counsel's arguments do not constitute evidence. The appellant concedes that, on two occasions during the trial, after he objected to improper argument by the prosecutor, the trial court instructed the jury that, "what the attorneys say is not evidence". However, the appellant submits that it was error to refuse to give his requested jury charge.
However, as conceded by the appellant, at each instance when the appellant objected to the prosecutor's improper comments, the trial court gave the jury curative instructions for them to exclude the remarks. During the prosecutor's closing argument, following the appellant's first noted objection to the prosecutor's argument, the trial court instructed the jury as follows:
 "Ladies and gentlemen, in arguing these cases, the arguments that you will hear and are hearing, you have to — these lawyers can argue their reasonable recollection of the evidence. They can argue any reasonable conclusions that they draw. What they say is not evidence. Y'all decide what the evidence is and the facts are."
Subsequently, during the prosecutor's closing, the appellant again objected and the trial court instructed the jury, as follows:
 "Well, I've already spoken to that. Ladies and gentlemen, I told you that the lawyers can argue their best recollection what the evidence is. I also told you they can argue any reasonable conclusions that they may draw. What they say is not evidence in this case. They must base their verdict on what the evidence in the case is. You'll be the judge of what the evidence is and facts are."
"The trial judge's immediate charge to the jury to disregard an impropriety raises a prima facie presumption against error.Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied,405 So.2d 731 (Ala. 1981)." Soriano v. State, 527 So.2d 1367, 1371
(Ala.Cr.App. 1988). In the present case, the jury was clearly instructed that the counsel's arguments were not to be considered as evidence and, thus, the trial court instructed the jury on each instance of such alleged error. Therefore, the appellant suffered no prejudice on this ground.
 IV
The appellant argues that the trial court erred in failing to give his requested *Page 854 
charge number 55. The appellant concedes that the trial court substantially covered the substance of the charge; however, the appellant argues that one portion of the charge was not covered by the trial court's oral instructions to the jury. The appellant's written charge is as follows (the underlined section being the allegedly omitted portion of the charge):
 "The Court charges the jury that the defendant has testified in defendant's own behalf. The defendant has a right to do that. The law says that the defendant may or may not, but the defendant has elected in this case to testify. You are authorized to weigh the defendant's testimony in light of the defendant's interest in the case. Of course the defendant is interested, because the defendant is the accused, but it does not follow necessarily that because of that, the defendant is not telling the truth. If you can reconcile the defendant's testimony and make it speak the truth, then you are not authorized to convict the defendant of a capital offense."
The portion of the requested charge, which the appellant alleges the trial court omitted, addresses conflicting testimony and the weight to be given thereto. A review of the trial court's oral charge shows that the trial court fairly and substantially covered the subject matter of the appellant's requested charge. The trial court charged the jury as follows (in pertinent part):
 ". . . You are authorized to consider his [appellant's] testimony just like that of any other witness, any other witness. You cannot capriciously reject his testimony just because he is a defendant in the case. You can consider many things. You can consider what weight, not only just the defendant but all witnesses. You can consider what weight that they have or interest they may have in the case. Of course the defendant has an interest in the case. He is the defendant. It does not necessarily follow that he is not telling the truth. That is up to you to decide. That's what you have to do in this case. Not just the defendant. Every witness. You have to decide whether or not how much there is in truth that goes with what they say. You have to weigh the testimony in the light of a person's interest, in the light of many things, which I will tell you about very shortly. But that is what I have to tell you about him testifying."
Because the trial court sufficiently addressed the allegedly omitted portion of the appellant's requested charge, the appellant was not prejudiced by the trial court's failure to give his requested charge. Perryman v. State, 558 So.2d 972
(Ala.Cr.App. 1989); Bogan v. State, 529 So.2d 1029 (Ala.Cr.App. 1988); Lambeth v. State, 380 So.2d 923 (Ala.), writ denied,380 So.2d 926 (Ala. 1980).
 V
The appellant alleges that the trial court erred in failing to grant his challenges for cause as to two prospective jurors. One of the prospective jurors stated that she had to pass the location of the victim's death every week and testified that her feelings "were it could also happen to me" and it made her "very angry." She testified that she hoped that they would find the culprit and "was pleased when they thought or they said they had found someone". However, she testified that she understood that the appellant was presumed to be innocent and also stated that she could listen to the evidence and form her decision impartially. The other prospective juror stated that he had discussed this offense with a friend at work and that his first thoughts concerned the fact that his wife worked downtown and he worried about her being harassed while walking to her car. He further stated that he agreed with his friend who had stated that "something has got to be done." The prospective juror stated that their conversation was "just talk" and he didn't remember having gone into specifics as to what should be done to the culprits when caught. When asked by the trial court about the harassing of the prospective juror's wife, he stated that someone had tried to grab her purse and she had been shot. The trial court asked the juror if he could base his *Page 855 
verdict solely on the evidence presented at trial. The prospective juror replied, "I can try." The trial court responded, "Don't try is not good. We want your best judgment." The juror stated, "Yeah, I can."
The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence. Kinder v. State, 515 So.2d 55, 60-61
(Ala.Cr.App. 1986). "Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples." Barbee v. State, 395 So.2d 1128, 1130 (Ala.Cr.App. 1981). "A trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion."Stewart v. State, 405 So.2d 402, 408 (Ala.Cr.App. 1981) and cases cited therein. We find no abuse of the trial court's discretion in the present case.
AFFIRMED.
All the Judges concur.