On Application for Rehearing

WISE, Presiding Judge.
The opinion that was released on July 30, 2010, is withdrawn and the following is substituted therefor.
The appellant, Mark Dwyatt Brown, was convicted of seventeen counts of capital murder in connection with the killings of Lena Maye Chandler Benefield (“Lena”), Shable Baxter Benefield (“Shable”), Reo William Benefield (“Reo”), and Durward Tysinger Benefield (“Durward”). Counts I, II, III, and IV charged him with the robbery-murder of Lena, Shable, Reo, and Durward, respectively. See § 13A-5-40(a)(2), Ala.Code 1975. Counts V, VI, VII, and VIII charged Brown with murder made capital because he committed it during the course of a second-degree burglary with regard to Lena, Shable, Reo, and Durward, respectively. See § 13A-5-40(a)(4), Ala.Code 1975. Counts IX, X, XI, and XII charged him with the arson-murder of Lena, Shable, Reo, and Durward, respectively. See § 13A-5^0(a)(9), Ala. Code 1975. Counts XIII, XIV, XV, and XVI charged Brown with murder made capital because he committed it during the course of a first-degree burglary of Lena, Shable, Reo, and Durward, respectively. See § 13A-5-40(a)(4), Ala.Code 1975. Finally, Count XVII charged him with murder made capital because he killed Lena, Shable, Reo, and Durward by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala.Code 1975. By a vote of 11-1, the jury recommended that Brown be sentenced to death. The trial court accepted the jury’s recommendation and sentenced him to death. Brown was also convicted of one count of conspiracy to commit capital murder, a violation of §§ 13A-4-3 and 13A-5-40, Ala. Code 1975, and the trial court sentenced him to serve a term of life in prison on that conviction. Brown filed a motion for a new trial, which was denied by operation of law. See Rule 24.4, Ala. R.Crim. P. This appeal followed.
Because this is a case in which the death penalty has been imposed, we have reviewed the record for plain error. See Rule 45A, Ala. RApp. P. Although the lack of an objection at trial will not bar our review of an issue in a case involving the death penalty, it will weigh against any claim of prejudice Brown may raise. See Ex parte Kennedy, 472 So.2d 1106 (Ala.1985). Rule 45A, Ala. R.App. P., provides:
*714 “In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review ... whenever such error has or probably has adversely affected the substantial right of the appellant.”
“[This] plain-error exception to the contemporaneous-objection rule is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.’ ” United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 n. 14 (1982)).
The following summary of the relevant facts, as prepared by the trial court, may be helpful to an understanding of this case:
“On February 8, 2005, Lena Maye Chandler Benefield and her sons, Durward Tysinger Benefield, Reo William Bene-field and Shable Baxter Benefield lived together in Cleburne County. Mark Brown was a resident of Calhoun County. He had received money from Reo William Benefield in the past. Mark Brown alleged this was ‘hush money’ for past sexual abuse he received from Reo. An agreement was made between Mark Brown, Shannon Brown and Tim Morris to get money from Reo Benefield and his relatives that lived in the house with him. The morning of February 8, 2005, Mark Brown, Shannon Brown and Tim Morris met at Mark Brown’s residence in Calhoun County. They left the residence around 7a... and went to Wal-Mart in Oxford. Mark Brown took his son’s baseball bat with him when he left. At Wal-Mart, the three purchased 3 rolls of duct tape, 3 ski masks and 3 pail’s of gloves. This was confirmed by video surveillance of the parking lot of the store as well as a camera at the register where the items were purchased. The threesome then traveled to Cleburne County where they made a stop at Tim Morris’ sister’s residence. Mr. Morris got a gun that he had left there. They then prdceeded to the Benefield residence. They hid themselves in an abandoned chicken house that Reo Benefield used as a workshop. The three co-defendants confronted Reo. They bound him and placed a dog food bag over his head. After assaulting Reo while in the chicken house, the defendants took Reo to the residence. Lena Benefield, Shable Benefield and Dur-ward Benefield were present at the residence.
“While inside, Shable Benefield was forced to write two checks (Colonial Bank # 0208 in the amount of $11,480.00 and SouthTrust Bank # 1423 in the amount of $8,590.00) payable to Reo Benefield. Mark Brown took a truck belonging to Shable Benefield. He and Reo Benefield went to both banks and cashed the checks. These transactions were confirmed by witness testimony from personnel from each bank and video surveillance from the banks. Additionally, the check drawn on the Colonial Bank account had body fluids on it which was found to contain the DNA of Reo Benefield and Mark Brown. Mark Brown and Reo Benefield then returned to the residence.
“At some point, all of the victims except 88 year old Lena Benefield were bound with duct tape securing their hands and feet. Additionally, duct tape was placed over their mouth and eyes. All victims were beaten about the head. Reo Benefield died as a result of blunt force trauma. The others were beaten until they were unconscious. Two fires were set in the house and the defendants left the residence. Lena, Shable and Durward Benefield all died from a combination of blunt force trauma and *715 from inhaling particles of combustion from the fire. Signs were found on their faces indicating they inhaled smoke from the fire. Additionally, their blood contained indicators that their lungs had processed the smoke.
“When the defendants left the Bene-field residence, they took Shable Bene-field’s truck that had been used by Mark Brown to drive to the banks. The defendants took part of the money and brought a truck. A description of this truck was relayed to local law enforcement. The truck was spotted by Cle-burne County deputies. The truck was stopped. Shannon Brown was driving. Mark Brown and Tim Morris jumped out of the truck and ran. Shannon Brown was found in possession of $6,800.00 in cash including one stack with a SouthTrust bank wrapper.
“Mark Brown was found a short time later. After he was taken into custody, an amount of currency ($8,000) was turned into the Cleburne County Sheriff’s Office by an individual who lived at the residence where Mark Brown had been hiding.
“Mark Brown was given his constitutional rights and he gave a statement regarding his involvement in the crime.”
(C.R.73-75.)
Brown argues that “[t]he trial court reversibly erred when it instructed the jury that it could convict [him] of capital murder even if he did not possess the specific intent to kill.” (Brown’s brief at p. 11.) Specifically, he contends that “the trial court repeatedly instructed the jury that [he] could be convicted of capital murder as long as one of his co-defendants possessed the specific intent to kill.” (Brown’s brief at p. 12.) Therefore, he concludes that “the jury believed that it could convict [him] of capital murder even if he did not possess the requisite intent to kill.” (Brown’s brief at p. 12.) Because Brown did not present this argument to the trial court, we review it for plain error. See Rule 45A, Ala. R.App. P.
“Alabama appellate courts have repeatedly held that, to be convicted of capital offense and sentenced to death, a defendant must have had a particularized intent to kill and the jury must have been charged on the requirement of specific intent to kill. E.g., Gamble v. State, 791 So.2d 409, 444 (Ala.Crim.App.2000); Flowers v. State, 799 So.2d 966, 984 (Ala.Crim.App.1999); Duncan v. State, 827 So.2d 838, 848 (Ala.Crim.App.1999).”
Ziegler v. State, 886 So.2d 127, 140 (Ala.Crim.App.2003).
“' “[N]o defendant is guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony murder doctrine. Beck v. State, 396 So.2d 645, 662 (Ala. March 6, 1981)”; Carnes, Alabama’s 1981 Capital Punishment Statute, 42 Ala. Law. 456, 468 (1981). See also E[n]mund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but see Godbolt v. State, 429 So.2d 1131, 1134 (Ala.Cr.App.1982), holding that E[n]mund is inapplicable to a defendant who does not receive the death penalty However, a non-triggerman can be convicted of a capital offense if he was a knowing accomplice to the intentional killing itself. Ritter v. State, 375 So.2d 270 (Ala.1979). “[T]he accomplice liability doctrine may be used to convict a non-trigger man accomplice if but only if the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the “underlying felony.” Ex parte Raines, 429 So.2d 1111, 1112 (Ala.1982), *716 cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
“ ‘Alabama’s 1981 capital punishment statute under which [the defendant] was convicted “provides that a defendant who does not personally commit the intentional killing which is part of the capital offense is nonetheless guilty of it and can be convicted of the capital offense, if that defendant intentionally promotes or assists in the commission of the intentional killing which is actually done by another.” Carnes, 42 Ala. Law at 471.
“ ‘Our duty on appeal was stated in Raines, 429 So.2d at 1113. “To affirm a finding of a ‘particularized intent to kill’, the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill.” ’
“Lewis v. State, 456 So.2d 413, 416-17 (Ala.Cr.App.1984).”
Rowell v. State, 570 So.2d 848, 850-51 (Ala.Crim.App.1990).
When it first instructed the jury regarding intent, the trial court stated:
“Now, ladies and gentlemen, the crime charged in this case, crimes I should say, is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than a general intent to commit the act. To establish specific intent, the State must prove that a defendant knowingly did an act which the law forbids or knowingly — I’m sorry, let me read that again.
“To establish specific intent, the State must prove that the defendant knowingly did an act which the law forbids, purposely intended to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.”
(R. 2445.) When it instructed the jury regarding accomplice liability, the trial court stated:
“[L]et me talk to you for just a minute because there are allegations and there’s been reference made of aiding and abetting, accomplice, complicity, if you will. A person is legally accountable for the behavior of another person constituting a crime if, with the intent to promote or assist the commission of the crime, he either procures, induces, or causes such other person to commit the crime; or, aids or abets such other person in committing the crime; or, has a legal duty to prevent the commission of the crime and fails to make such effort as he is legally required to make to prevent it.
“Now, a person is not legally accountable for the behavior of another person constituting the crime if either he’s a victim of that crime or the crime is defined in such a way that his conduct is inevitably incidental to its commission; or, before the commission of the crime, he voluntarily terminates his effort to promote or assist its commission and he gives timely and adequate warning to law enforcement authorities; or, gave timely and adequate warning to the intended victim; or, wholly deprived his complicity of its effectiveness in the commission of the crime. And the burden is on the State to prove that the defendant did not voluntarily terminate his effort to promote or assist the commission of the crime charged.”
(R. 2446-47.)
When it instructed the jury regarding Count I of the indictment, i.e., the capital offense of murder during the robbery of Lena, the trial court stated, in part:
*717 “A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real, and it must be specific.”
(R. 2449.) It also stated:
“A person acts intentionally with respect to a result or to conduct when his or her purpose is to cause that result or to engage in that conduct.”
(R. 2450.)
When it instructed the jury regarding Count II of the indictment, i.e., the capital offense of murder during the robbery of Shable, the trial court stated, in part:
“To convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during robbery in the first degree:
“That Shable Benefield is dead.
“That the defendant, Mark Brown, caused the death, or someone else, as he aided and abetted them, that being, to wit, Shannon Wayne Brown or Timothy Patrick Morris, caused the death of Sha-ble Benefield by striking him with a blunt object, to wit, a baseball bat, and by causing him to inhale products of combustion from a fire.
“That in committing these acts which caused the death of Shable Benefield, the defendant intended to kill the deceased, or another person, or another individual who he aided and abetted intended to kill.
“A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.”
(R. 2458-59) (emphasis added).
When it instructed the jury regarding Count III of the indictment, i.e., the capital offense of murder during the robbery of Reo, the trial court stated, in part:
“To convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during robbery in the first degree:
[[Image here]]
“That in committing the acts which caused the death of Reo Benefield, the defendant intended — the defendant, or another participant, intended to kill the deceased or another person. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.”
(R. 2469-70) (emphasis added).
When it instructed the jury regarding Count V of the indictment, i.e., the capital offense of murder of Lena during a second-degree robbery, the trial court stated, in part:
“The defendant is charged with capital murder. The law states that an intentional murder committed during a burglary in the second degree is capital murder. A person commits an intentional murder if he causes the death of another person in performing the act, or acts, which caused the death of another person, he or another participant intends to kill that person.
“... To convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a burglary in the second degree:
[[Image here]]
“That in committing the act which caused the death of Lena Maye Bene-field, the defendant intended to kill, or another participant, intended to kill the deceased or another person. A person acts intentionally when it is his purpose to cause the death of another person. *718 The intent to kill must be real and it must be specific.”
(R. 2487, 2488) (emphasis added).
When it instructed the jury regarding Count VI of the indictment, i.e., the capital offense of murder of Shable during a second-degree robbery, the trial court stated, in part:
“Let me insert something in this one, and it will save me some words.
“Understand, ladies and gentlemen, as the indictment charges, that it’s not just that Mark Brown committed that offense, but that he aided and abetted that offense. So when I say ‘Mark Brown,’ then you can also put into that area those other two individuals being Shannon Brown and Timothy Morris; is that agreeable? Save me from reading that because there is a charge that he aided and abetted, which is an element of the offense that must be satisfied beyond a reasonable doubt.
“So to convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a burglary in the second degree:
[[Image here]]
“That in committing the acts which caused the death of Shable Benefield, the defendant intended to kill the deceased, or another person. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.”
(R. 2496-97.)
During its instructions with regard to Counts II, III, and V, and during its instructions as to Count VI and subsequent counts, the trial court improperly instructed the jury that it could find Brown guilty of capital murder if it found that he or another participant — namely, Shannon Brown or Timothy Morris — intended to killed the deceased or another person. However,
“[ujnder the accomplice liability doctrine, a nontriggerman accomplice may be convicted of the capital offense of double murder only if he had the particularized intent that both victims be killed. Cf. Kennedy v. State, 472 So.2d 1092 (Ala.Cr.App.1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). In addition, ‘[t]o affirm a finding of a “particularized intent to kill” the jury must be properly charged on the intent to kill issue.’ Ex parte Raines, 429 So.2d 1111, 1113 (Ala.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983); see also Bankhead v. State, 585 So.2d 97 (Ala.Cr.App.1989), remanded on rehearing on other grounds, 585 So.2d 112 (Ala.1991).”
Tomlin v. State, 591 So.2d 550, 557 (Ala.Crim.App.1991).
After reviewing the entire instructions in this case, it is clear that the trial court did not adequately inform the jury that Brown could not be convicted of capital murder unless it determined that he had the specific, particularized intent to kill. Rather, the above-referenced instructions would have allowed the jury to find Brown guilty of the capital offense, even if he did not have the particularized intent to kill, as long as one of his codefendants had the particularized intent to kill. Therefore, those instructions were erroneous.
We further note that, during the State’s closing argument, the prosecutor stated:
“Accountability for the behavior of another. You’ll hear this called a lot of things. But in Alabama, as I told you during voir dire, you’re responsible for what other people who are working with you do. That’s called in the indictments *719 aiding and abetting, and we’ll get that definition in a minute.
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense, he procures, induces, or causes such other person to commit the offense. Well, who talked these two guys into going up to Reo Benefield’s house? Did you hear anything saying Shannon or Tim Morris had a connection with the Benefields? It’s Mark. He got them into this to start with. He aids or abets, and again, I’ll define that in a minute, such other person in committing the offense, and having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make. That’s the idea of renunciation. He gets into this, and he never tries to get out. Doesn’t show anything in his actions or what we’ve heard in the evidence that indicates he wanted out.
“Aiding or abetting, that’s in the indictment, the judge will talk about it. The words aid and abet encompasses all assistance by acts; words of encouragement; support; presence, actual, or constructive; rendering aid should it become necessary. Again, in my voir dire, I talked about the idea of a lookout, getaway driver, gunman.
“At that point, all of y’all said, everybody that’s on this jury said I could hold all of them responsible for the activities of the gunman because they were all acting in concert with each other, and that’s what aiding and abetting talks about.
“Further, another term that’s used for that same type of conduct is accomplice liability. Any person who aids or abets the completion of a crime through any act of commission or omission, and again, we talk about renunciation, it’s one thing if you help commit the crime, but if you stand by idly and watch it happen, you’re not doing anything to stop it, so you can’t say, look, I didn’t hit that particular person and expect that to be a defense.
“He is responsible for the criminal act as his co-defendant. Rendering aid can take place in planning, strategy, supplying necessary equipment like a car. Mark Brown was the driver that got them there, acting as a henchman, a lookout, or a getaway driver. There is no longer a legal distinction between principals and accessories in Alabama. As I told you in my voir dire, you’re in for a penny, you’re in for a pound, or as Mark Brown said when he talked to Natalie Watkins, you start something together, you finish it together.
“Intent, we heard that, and that is one thing that’s required in the law for you to prove with the majority of crimes we have in Title 13. A person must act with intent. You don’t accidentally rob somebody; you don’t accidentally kill somebody and get charged with Capital Murder.
“The quirk here is Mark Brown’s intent, because of the accomplice liability statute and all the things you’ve just listened to, at times is the intent of his buddies. If you sign on for a robbery and you intend to commit that robbery and you bring two guys with you and you want them to commit that robbery with you and one of them decides I’m going to kill somebody during this robbery and they intended to commit that murder, you got their intent. You’re all in together.
“A person intends the natural consequences of their actions. If you swing a baseball bat at somebody’s head, what do you intend? You may infer intent circumstantially through the actions of the defendant or the co-defendant. And we talked about that in voir dire, what circumstantial evidence is. We have di *720 rect evidence in this case, the videos, the statements, different things are available to you. But you can infer certain things, and we’ve talked about the idea of was Mark Brown remorseful for what he did? Watch those videos. See if he seemed upset about it to you.
“The intent of a person aiding or abetting an offense is that of his co-defendants, and his intent is that his co-defendants’ will will be carried out.
“You may infer intent through the possession, brandishing, or use of weapons, restraints and/or starting that fire. What do you intend when you have four people in the house and you light the house on fire?”
(R. 2368-70.) Also, during the State’s rebuttal closing argument, the prosecutor stated:
“What one does, we all do, and we should be held accountable and responsible for what each of us do in concert with one another. And in one of his statement, he said, ‘Once I got my share — part,’ ‘Once I got my share— part.’ He was in it the whole way, and I ask you to find him guilty and I ask you to give him justice and I ask you to bind him to his crime. Complete the tie that binds him to his crime. Thank you.”
(R. 2432.) The State incorrectly argued that Brown could be found guilty of capital murder, even if he did not have the requisite intent to kill, as long as one of his codefendants had the intent to kill the deceased or another person. Therefore, as Brown correctly argues, the prosecutor’s statements during closing argument further undermined the reliability of his convictions.
Based on the trial court’s instructions, the jury could have found Brown guilty of capital murder if he intended to commit another felony, i.e., first-degree robbery, first-degree burglary, second-degree burglary, or arson, but did not intend to kill the deceased or another person. Therefore, the instructions did not clearly distinguish the intent element for the offense of capital murder from the intent element for the offense of felony-murder. Brown argues that the sole issue before the jury was whether he was guilty of capital murder because he intended to kill the victims or whether he was guilty of felony-murder because he did not intend to kill the victims. He also contends that his defense was that he only intended to rob them and that he did not have any reason to kill them. Because the trial court’s instructions effectively abolished any distinction between capital murder and felony-murder, we cannot find that the error in giving those instructions regarding intent was harmless. See Russaw v. State, 572 So.2d 1288, 1293 (Ala.Crim.App.1190) (finding that there was plain error where “the instructions of the trial court [were] highly confusing because of the failure to clearly distinguish the intent element in the crimes of capital murder, felony-murder, and murder in connection with the doctrine of accomplice liability”).
For the above-stated reasons, we conclude that all of Brown’s convictions must be reversed because the trial court gave erroneous instructions regarding intent. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
APPLICATION FOR REHEARING OVERRULED; OPINION OF JULY 30, 2010, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.