JOINER, Judge.
Thomas Doyle Crowe was convicted of three counts of capital murder in connection with the murder of Marvin Allen Dai-ley.[1] Specifically, Crowe was convicted of (1) the intentional murder of Dailey during the course of a robbery, see § 13A-5-40(a)(2), Ala.Code 1975; (2) the intentional murder of Dailey during the course of a burglary, see § 13A-5-40(a)(4), Ala.Code 1975; and (3) the intentional murder of Dailey during the course of an arson, see § 13A-5-40(a)(9), Ala.Code 1975. By a vote of 11-1, the jury recommended that Crowe be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Crowe to death.
The circuit court, in its sentencing order, provided the following summary of the relevant facts of the underlying case:
“Sometime during the day of November 25, 2009, which was the day before Thanksgiving, the defendant, Thomas Crowe, and the codefendant, Toni Collins, were at the home of Mr. Marvin Dailey, the deceased. While at Mr. Dai-ley’s home they all went to the Mountain Top convenience store and purchased alcoholic beverages. They went back to Mr. Dailey’s home and consumed all or a part of the alcohol which had been purchased. Mr. Crowe and Ms. Collins left Mr. Dailey’s home during the afternoon or early evening. Later that same evening Mr. Crowe and Ms. Collins returned to Mr. Dailey’s home for a second time. While Mr. Crowe and Ms. Collins were at Mr. Dailey’s home, on this second occasion, Mr. Crowe started a fire in a bedroom. Mr. Dailey was struck in the head multiple times with a hammer and/or a hatchet type instrument. Ms. Collins and Mr. Crowe proceeded to take from Mr. Dailey’s home a television, some old watches or watch parts, and Mr. Dailey’s 1985 Chrysler Fifth Avenue automobile.
“Mr. Dailey’s home was consumed by fire. Mr. Dailey was found inside the home, and an autopsy showed that he had died from smoke and soot inhalation with a contributing factor being blunt impact trauma to the head. Mr. Dai-ley’s body was badly burned, and both legs from the thigh and below were completely consumed by the fire.
“After leaving Mr. Dailey’s home, Mr. Crowe and Ms. Collins returned to the *683 home of Jeff Link. Mr. Link is a first cousin to Mr. Crowe, and Mr. Crowe and Ms. Collins had been staying at Mr. Link’s home. Mr. Link testified that upon Mr. Crowe and Ms. Collins returning to his home sometime around midnight, that Mr. Crowe stated he had beat somebody up real bad. Mr. Link testified that Mr. Crowe and Ms. Collins returned to his house in two separate cars. One of the cars was Mr. Crowe’s white car and the other was Mr. Dailey’s gold car. Mr. Link testified that Mr. Crowe brought a television into the home and that Ms. Collins burned her clothes and Mr. Crowe’s clothes in a metal trash can outside the house. Ms. Collins testified that she threw the hammer type instrument into a pond adjacent to Mr. Link’s home.
“After being alerted to the fire and the discovery of Mr. Dailey’s body, the Blount County Sheriffs department began an investigation into the fire, Mr. Dailey’s death, and his missing automobile. On Thanksgiving Day or the day after, the Blount County Sheriffs office received information that Mr. Dailey’s car was at Mr. Link’s residence. On November 27, 2009, Blount County Sheriff Deputy Steve Fowler and another deputy arrived at Mr. Link’s home. Ms. Collins was at Mr; Link’s home at this time. Ms. Collins gave a statement to Deputy Fowler which implicated Mr. Crowe, but did not implicate herself. Mr. Dailey’s automobile was recovered at this time and taken to the Blount County Sheriffs department.
“Ms. Collins was subsequently arrested for the death of Mr. Dailey the following Monday. Thereafter, Ms. Collins spoke with Deputy Fowler a second time and gave another statement. A short time after giving the second statement Ms. Collins, while in custody, was taken to Mr. Link’s house. At this time Ms. Collins directed the officers to the area of the pond where she had thrown the hammer type instrument and to an area across the road where she had thrown the watches. Blount County Sheriff investigators recovered a masonry hammer from the pond and the watches or watch parts were recovered from an area that is across a public road from Mr. Link’s home. Mr. Dailey’s television was recovered from the sister of Mr. Link. Mr. Link testified that he had given the television to her because he thought it was stolen.
“Mr. Crowe was arrested shortly thereafter for the death of Mr. Dailey.”
(C. 375-83.)
Crowe raises a number of issues on appeal. One issue, however, is dispositive: Whether the circuit court erred when it instructed the jury that it could convict Crowe of capital murder if it found that Crowe “or another participant” intended to kill Dailey.[2] (R. 1734; 1747-48.)
“It is well settled law that a trial court has broad discretion in formulating its instructions to the jury, so long as the instructions accurately state the law.” Hosch v. State, 155 So.3d 1048, 1078 (Ala.Crim.App.2013) (citing Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000)). In Brown v. State, 72 So.3d 712, 715 (Ala.Crim.App.2010), this Court noted:
“‘Alabama appellate courts have repeatedly held that, to be convicted of [a] capital offense and sentenced to death, a defendant must have had a particularized intent to kill and the jury must have been charged on the requirement of specific intent to kill. E.g., Gamble v. State, 791 So.2d 409, 444 (Ala.Crim.App. *684 2000); Flowers v. State, 799 So.2d 966, 984 (Ala.Crim.App.1999); Duncan v. State, 827 So.2d 838, 848 (Ala.Crim.App. 1999).’ ”
(Quoting Ziegler v. State, 886 So.2d 127, 140 (Ala.Crim.App.2003).) Further,
“ ‘ “ ‘no defendant is guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony murder doctrine. Beck v. State, 396 So.2d 645, 662 (Ala. March 6, 1981)’; Carnes, Alabama’s 1981 Capital Punishment Statute, 42 Ala. Law. 456, 468 (1981). See also E[n]mund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but see Godbolt v. State, 429 So.2d 1131, 1134 (Ala.Cr.App. 1982), holding that E[n]mund is inapplicable to a defendant who does not receive the death penalty[.] However, a non-triggerman can be convicted of a capital offense if he was a knowing accomplice to the intentional killing itself. Ritter v. State, 375 So.2d 270 (Ala.1979). ‘[T]he accomplice liability doctrine may be used to convict a non-trigger man accomplice if but only if the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the “underlying felony.” ’ Ex parte Raines, 429 So.2d 1111, 1112 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
“1 “Alabama’s 1981 capital punishment statute under which [the defendant] was convicted ‘provides that a defendant who does not personally commit the intentional killing which is part of the capital offense is nonetheless guilty of it and can be convicted of the capital offense, if that defendant intentionally promotes or assists in the- commission of the intentional killing which is actually done by another.’ Carnes, 42 Ala. Law at 471.
“ ‘ “Our duty on appeal was stated in Raines, 429 So.2d at 1113. ‘To affirm a finding of a “particularized intent to kill”, the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill.’ ” ’ ”
Brown, 72 So.3d at 715-16 (quoting Rowell v. State, 570 So.2d 848, 850-51 (Ala.Crim.App.1990), quoting in turn Lewis v. State, 456 So.2d 413, 416-17 (Ala.Crim.App. 1984)).
In Brown, we considered whether the circuit court there had erred in instructing the jury that it could convict the defendant of capital murder even if he had not possessed the intent to kill. Under a plain-error analysis, we reversed all 17 counts of capital murder for which Brown had been convicted because “the instructions [given by the circuit court] did not clearly distinguish the intent element for the offense of capital murder from the intent element for the offense of felony-murder.” Brown, 72 So.3d at 720. We noted that “the trial court did not adequately inform the jury that Brown could not be convicted of capital murder unless it determined that he had the specific, particularized intent to kill.” Id. at 718 (emphasis in original). In Brown,
“[w]hen it first instructed the jury regarding intent, the trial court stated:
“ ‘Now, ladies and gentlemen, the crime charged in this case, crimes I should say, is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than a general intent to commit the act. To establish specific intent, the State must prove that a defendant knowingly did an act which the law forbids or knowingly — I’m sorry, let me read that again.
“‘To establish specific intent, the State must prove that the defendant knowingly did an act which the law forbids, purposely intended to violate *685 the law. Such intent may be determined from all the facts and circumstances surrounding the case.’
“(R. 2445.) When it instructed the jury regarding accomplice liability, the trial court stated:
“ ‘[L]et me talk to you for just a minute because there are allegations and there’s been reference made of aiding and abetting, accomplice, complicity, if you will. A person is legally accountable for the behavior of another person constituting a crime if, with the intent to promote or assist the commission of the crime, he either procures, induces, or causes such other person to commit the crime; or, aids or abets such other person in committing the crime; or, has a legal duty to prevent the commission of the crime and fails to make such effort as he is legally required to make to prevent it.
“ ‘Now, a person is not legally accountable for the behavior of another person constituting the crime if either he’s a victim of that crime or the crime is defined in such a way that his conduct is inevitably incidental to its commission; or, before the commission of the crime, he voluntarily terminates his effort to promote or assist its commission and he gives timely and adequate warning to law enforcement authorities; or, gave timely and adequate warning to the intended victim; or, wholly deprived his complicity of its effectiveness in the commission of the crime. And the burden is on the State to prove that the defendant did not voluntarily terminate his effort to promote or assist the commission of the crime charged.’
“(R. 2446^47.)
“When it instructed the jury regarding Count I of the indictment, i.e., the capital offense of murder during the robbery of Lena [Benefield], the trial court stated, in part:
“ ‘A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real, and it must be specific.’
“(R. 2449.) It also stated:
“ ‘A person acts intentionally with respect to a result or to conduct when his or her purpose is'to cause that result or to engage in that conduct.’ “(R. 2450.)
“When it instructed the jury regarding Count II of the indictment, i.e., the capital offense of murder during the robbery of Shable [Benefield], the trial court stated, in part:
“ ‘To convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during robbery in the first degree:
“ ‘That Shable Benefield is dead.
“ ‘That the defendant, Mark Brown, caused the death, or someone else, as he aided and abetted them, that being, to wit, Shannon Wayne Brown or Timothy Patrick Morris, caused the death of Shable Benefield by striking him with a blunt object, to wit, a baseball bat, and by causing him to inhale products of combustion from a fire.
“ ‘That in committing these acts which caused the death of Shable Benefield, the defendant intended to kill the deceased, or another person, or another individual who he aided and abetted intended to kill.
“ ‘A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.’
“(R. 2458-59) (emphasis added).
“When it instructed the jury regarding Count III of the indictment, i.e., the capital offense of murder during the *686 robbery of Reo [Benefield], the trial court stated, in part:
“ ‘To convict, the State must prove beyond a reasonable doubt each of the following elements of an. intentional murder during robbery in the first degree:
[[Image here]]
“ ‘That in committing the acts which caused the death of Reo Benefield, the defendant intended — the defendant, or another participant, intended to kill the deceased or another person. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.’
“(R. 2469-70) (emphasis added).
“When it instructed the jury regarding Count V of the indictment, i.e., the capital offense of murder of Lena [Bene-field] during a second-degree robbery, the trial court stated, in part:
“‘The defendant is charged with capital murder. The law states that an intentional murder committed during a burglary in the second degree is capital murder. A person commits an intentional murder if he causes the death of another person in performing the act, or acts, which caused the death of another person, he or' another participant intends to kill that person.
“ ‘... To convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a burglary in the second degree:
[[Image here]]
“ ‘That in committing the act which caused the death of Lena Maye Bene-field, the defendant intended to kill, or another participant, intended to kill the deceased or another person. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and it must be specific.’
“(R. 2487, 2488) (emphasis added).
“When it instructed the jury regarding Count VI of the indictment, i.e., the capital offense of murder of Shable [Benefield] during a second-degree robbery, the trial court stated, in part:
“ ‘Let me insert something in this one, and it will save me some words.
“ ‘Understand, ladies and gentlemen, as the indictment charges, that it’s not just that Mark Brown committed that offense, but that he aided and abetted that offense. So when I say “Mark Brown,” then you can also put into that area those other two individuals being Shannon Brown and Timothy Morris; is that agreeable? Save me from reading that because there is a charge that he aided and abetted, which is an element of the offense that must be satisfied beyond a reasonable doubt.
“ ‘So to convict, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a burglary in the second degree:
[[Image here]]
“ ‘That in committing the acts which caused the death of Shable Benefield, the defendant intended to kill the deceased, or another person. A person acts intentionally when it is' his purpose to cause the death of another person. The intent to kill must be real and it must be specific.”
“(R. 2496-97.)”
Id. at 716-18.
As the State reminds us, we do not review jury instructions in isolation. See Ziegler v. State, 886 So.2d 127, 140 (Ala. Crim.App.2003). In Ziegler, under a plain-error analysis, we determined that William *687 John Ziegler was due no relief on a claim “that the jury charge failed to inform the jurors that Ziegler could be guilty of capital murder only if they determined that he had a particularized intent to Mil.” Id. at 139. Specifically, Ziegler challenged the following instruction regarding accomplice liability:
“ ‘The law of this state says that when one or more persons enter upon unlawful purposes with common intent to aid and encourage each other in anything within their common design, each is criminally responsible for everything which may, as a consequence, subsequently result from such unlawful purpose, whether or not such results were contemplated.’ ”
Id. at 140.
We noted that
“[although Ziegler contends that the jury was never instructed that he could be held legally responsible for the murder only if he had a particularized intent that the accomplice Mil, a review of the jury charge discloses otherwise. In the initial portion of the jury charge, the trial court instructed the jury that, in order to sustain the allegations of the indictment, the State had to prove that Ziegler ‘intentionally caused the death of Allen Baker.’ (R. 844.) The court repeatedly instructed the jury that proof of an ‘intentional murder’was required. (R. 844-45, 847, 848-49.) In its instruction regarding accomplice liability, the trial court repeatedly instructed the jury that a person is legally accountable for the acts of another if he has the specific intent to assist the other person in the commission of the underlying offense, for which there is a ‘community of interest or unlawful intent.’ (R. 850-52.)
“The trial court’s jury charge fully informed the jurors that, before they could render a guilty verdict on the capital-murder charge, they would have to find that the State proved beyond a reasonable doubt that Ziegler had the specific intent to kill Allen Baker, even if he did not strike the fatal blows. The instructions on intent and on accomplice liability, when considered together, were proper, and they were thorough and specific enough to ensure that a guilty verdict would not be returned unless the jury found that Ziegler had the specific intent to Mil.”
Id. (emphasis added).
In the instant case, when instructing the jury regarding accomplice liability, the circuit court stated:
“The law says that a person is accountable for the behavior of another person constituting a crime if with intent to produce or assist the commission of an offense, he procures, induces or causes such other person to commit the offense or he aids or abets such other person in committing the offense. A participant, in the context of this case, is one who would be legally accountable as being the cause or aiding or abetting the commission of the offense or in failing to make such effort as they may legally be required to make to prevent the commission of the offense. The law says a person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or to engage in that conduct. An intent may be formed in an instant.”
(R. 1729-30.)
When charging the jury on Count I of the indictment, the circuit court instructed:
“In Count I, the defendant is charged with capital murder. The law says that an intentional murder committed during a robbery in the first degree is capital murder. A person commits an intentional, [sic] murder if he causes the death of another person and in performing the act or acts which caused the *688 death of that other person, he intends to kill that person. A person commits the crime of robbery in the first degree if in the course of committing or attempting to commit a theft, he uses force against the person of the owner or any person present with the intent to overcome his physical resistance or physical power of resistance, or threatens the imminent use of force against the person of the owner or any other person present with intent to compel acquiescence to the taking of or escaping with the property and in doing so he causes serious physical injury of another.
“To convict the defendant of this charge, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a robbery in the first degree. First, that Marvin Dailey is deceased. Two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or a hatchet/sword type instrument. Three, that in committing the acts which caused the death of Mr. Dai-ley, the defendant or another participant intended to kill the deceased.
“A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific.
[[Image here]]
“A person commits the crime of intentional murder if he causes the death of another person, and in performing the act or acts which causes the death of that person, he intends to kill that person. To convict the defendant of intentional murder the State must prove beyond a reasonable doubt each of the following: One, that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or- a hatchet/sword type instrument; and three, that in committing the acts which caused the death of Mr. Dailey the defendant or another participant acted with intent.
“The law says a person acts intentionally when it is his purpose to cause the death of another person. If you find from the evidence that the State has proven beyond a reasonable doubt each of the above elements of intentional murder, then you should find the defendant guilty of intentional murder.
“If you find the State has failed to prove beyond a reasonable doubt any one or more of the elements of the offense of intentional murder, then you cannot find the defendant guilty of that charge. Instead, you must next consider the evidence as to the lesser included offense of felony murder. Felony murder is causing the death of another person during the commission of another felony offense, except that the murder is an unintentional murder. It is not a murder that you had the intent to cause. If you do not have the specific intent to kill an individual or if you cause the death of another person unintentionally, but you caused that death while you were committing a robbery in any degree, then you are liable for that person’s murder even though the death was unintentional.
“A person commits the crime of felony murder if he commits or attempts to commit robbery in the first degree, and in the course of the crime or in furtherance of the crime or in immediate flight from the crime he is committing or attempting to commit, he or another participant causes the death of any person. To convict the defendant of felony murder, the State must prove beyond a reasonable the following elements: One, *689 that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or a hatchet/sword type instrument; three, in committing the acts which caused the death of Mr. Dai-ley the defendant or another participant was acting in the course of or in furtherance of or in the immediate flight from the crime of robbery in any degree; and four, that in doing the acts which constituted the commission of or the attempted commission or robbery in any degree, and during the course of which or in furtherance of which or in immediate flight from which the death of Mr. Dai-ley was caused by the defendant or another participant.”
(R. 1733-40 (emphasis added).)
In charging the jury on Count II of the indictment, the circuit court instructed:
“In Count II, the defendant is charged with capital murder. Again, the law states that an intentional murder committed during a burglary in the first degree is capital murder. Again, a person commits an intentional murder if he causes the death of another person, and in performing the act or acts which caused the death of that other person, he intended to kill that person.
[[Image here]]
“To convict the defendant of this charge, the State must prove beyond a reasonable doubt each of the following elements of intentional murder during a burglary in the first degree. One, again that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or a hatchet or sword-type instrument; three, that in committing the acts which caused the death of Mr. Dailey, the defendant or another participant intended to kill Mr. Dailey. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific. Four, that the defendant or another participant knowingly and unlawfully entered or remained unlawfully in the dwelling of Mr. Dailey; five, that in so doing the defendant or another participant acted with intent to commit a crime therein, that being theft; and six, that while in the dwelling or in affecting entry thereto, or in the immediate flight therefrom, the defendant or another participant in the crime caused physical injury to any person who was not a participant in the crime; and seven, that the murder took place during a burglary.
[[Image here]]
“Again, a person commits the crime of intentional murder if he causes the death of another person, and in performing that act or acts which caused the death of that person, he intends to kill that person. To convict the defendant of intentional murder, the State must prove beyond a reasonable doubt the following: One, that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation or by striking him about the head with a masonry tool and/or a hatchet or sword type instrument; three, that in committing the acts which caused the death of Mr. Dailey, the defendant or another participant acted with intent.
[[Image here]]
“As I told you, felony murder is causing the death of another person during the commission of another felony offense, except that the murder is unintentional; it is not a murder that you had *690 intent to cause. If you do not have the specific intent to kill an individual or if you cause the death of another person unintentionally, but you caused that death while you are committing a burglary in the first degree, then you are liable for that person’s murder even though the death was unintentional.
“A person commits the crime of felony murder if he commits or attempts to commit burglary in the first degree and in the course of the crime or in furtherance of the crime or in immediate flight from the crime he is committing or attempting to commit, he or another participant causes the death of any person.
“To convict the defendant of felony murder, the State must prove beyond a reasonable doubt one, that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation or by striking him about the head with a masonry tool and/or a hatchet/sword type instrument; three, that in committing the acts which caused the death of Mr. Dailey, the defendant or another participant was acting in the course of, or in furtherance of or in immediate flight from the crime of burglary in the first degree; and four, that in doing the acts which constituted the commission of or the attempted commission of burglary in the first degree, and during the course of which or in furtherance of which or in immediate flight from which the death of Mr. Dailey was caused by the defendant or another participant.”
(R. 1746-53 (emphasis added).)
When charging the jury on Count III of the indictment, the circuit court stated:
“In Count III, the defendant is charged with capital murder. Again, the law states that an intentional murder committed during arson in the first degree is capital murder. A person commits an intentional murder if he causes the death of another person, and in performing the act or acts which caused the death of that other person, he intends to kill that person.
“The law says a person commits the crime of arson in the first degree if he intentionally damages a building by starting or maintaining a fire at a time when another person is present in the building, and he knew of the other person’s presence, or the circumstances are such as to render the presence of another person in the building a reasonable possibility.
“To convict the defendant of this charge, the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during arson in the first degree: One, that Mr. Marvin Dailey is deceased. Two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or a hatchet/sword type instrument. Three, that in committing the acts which caused the death of Mr. Dai-ley, the defendant intended to kill the deceased. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific. Four, that the defendant or another participant damaged a building by starting or maintaining a fire. Five, that the defendant or another participant did so intentionally. Six, that at the time another person was present in that building. Seven, that either the defendant or another participant knew another person was present in the building, or the circumstances were such as to render the presence of another person in the building a reasonable possibility. And eight, that the murder took place during the arson.
*691 [[Image here]]
“Again, a person commits the crime of intentional murder if he causes the death of another person, and in performing the act or acts which caused the death of that person, he intends to kill that person. Again, to convict the defendant of intentional murder, the State must prove beyond a reasonable doubt: One, that Mr. Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation or by striking him about the head with a masonry tool and/or hatchet/sword type instrument; and three, that in committing the acts which caused the death of Mr. Dailey, the defendant or another participant acted with intent.
[[Image here]]
“As I stated earlier, felony murder is causing the death of another person during the commission of another felony offense, except that the murder is an unintentional murder. It is not a murder that you had intent to cause. If you do not have the specific intent to kill an individual or if you cause the death of another person unintentionally, but you cause that death while you are committing arson in the first degree, then you are liable for that person’s murder even though the death was unintentional.
“A person commits the crime of felony murder if he commits or attempts to commit arson in the first degree, and in the course of the crime or in furtherance of the crime or in immediate flight from the crime, he is committing or attempting to commit, he or another participant causes the death of any person.
“To convict the defendant of felony murder, the State must prove beyond a reasonable doubt: One, that Marvin Dailey is deceased; two, that the defendant or another participant caused the death of Mr. Dailey by starting or maintaining a fire which led to smoke or soot inhalation, or by striking him about the head with a masonry tool and/or a hatchet/sword type instrument; three, that in committing the acts which caused the death of Mr. Dailey, the defendant or another participant was acting in the course of, in the furtherance of or in immediate flight from the crime of arson in the first degree; four, that in doing the acts which constituted the commission of or the attempted commission of arson in the first degree, and during the course of which or in furtherance of which or in immediate flight from which the death of Mr. Dailey was caused by the defendant or another participant.”
(R. 1757-64 (emphasis added).)
As noted above, Crowe timely objected to the circuit court’s instructions to the jury that the jury could convict Crowe of capital murder if it found that Crowe “or another participant” intended to kill Dai-ley. On appeal, the State argues that “the trial court clearly delineated that capital murder required an intentional killing plus a predicate felony.” (State’s brief, p. 16.) We disagree; the circuit court’s instructions, which were given at the request of the State,[3] did not clarify that it was Crowe’s intent that was determinative for *692 the intentional-murder component of the capital-murder charges.
The State correctly notes that, regarding Count I of the indictment, the trial court instructed the jury that “[a] person commits an intentional, [sic] murder if he causes the death of another person and in performing the act or acts which caused the death of that other person, he intends to kill that person.” (R. 1733.) Later, however, the circuit court charged the jury that an element of intentional murder is whether “the defendant or another participant intended to kill the deceased.” (R. 1734 (emphasis added).) The trial court gave similar conflicting instructions when charging the jury on Count II of the indictment. The circuit court instructed that “a person commits an intentional murder if he causes the death of another person, and in performing the act or acts which caused the death of that other person, he intended to kill that person.” (R. 1746.) The trial court subsequently charged the jury, however, that an element of intentional murder was whether “the defendant or another participant intended to kill Mr. Dailey.” (R. 1747-48 (emphasis added).)
Thus, the circuit court’s instructions on Counts I and II of the indictment were in conflict with its instructions on Count III and incorrectly informed the jury that it could convict Crowe of capital murder without necessarily finding that he had the intent to kill Dailey. Further, the instructions on Count III were internally inconsistent. Additionally, as Crowe points out on appeal, the circuit court “modified the Alabama Pattern Jury Instructions by replacing defendant with ‘defendant or another participant’ ” when the circuit court instructed the jury for every lesser-included offense of the three-count indictment: felony murder, manslaughter, first-degree robbery, and first-degree theft as to Count I; felony murder, manslaughter, first-degree burglary, and theft as to Count II; and arson, felony murder, manslaughter, and first-degree arson as to Count III.
Crowe did not testify in his own defense at trial, but the State introduced an audio recording of Crowe speaking to his wife and mother while he was in jail. In that audio recording, Crowe admitted, among other things, that he had participated in robbing Dailey and said that he had “slapped the f-out of’ Dailey; Crowe stated, however, that he had not killed Dailey and that he had not intended for Dailey to be killed. Crowe further stated on the tape that he saw Collins strike Dailey in the back of a head with a “g - d d-ned hammer” and that Collins had killed Dailey.
Crowe’s defense strategy involved, among other things, attempting to discredit Collins — the key witness who provided testimony indicating that Crowe acted with the specific intent to kill Dailey. The circuit court’s instructions did not adequately inform the jury that, in order to find Crowe guilty on all counts of capital murder, it would have to find that the State proved that Crowe had the specific, particularized intent to kill Dailey. Brown, 72 So.3d at 720 (the circuit court’s instructions, as a whole, “did not clearly distinguish the intent element for the offense of capital murder from the intent element for the offense of felony-murder”); cf. Ziegler, 886 So.2d at 140. Thus, even if the jury concluded that Crowe did not have the specific intent to kill Dailey, the circuit court’s instructions permitted the jury to convict Crowe of capital murder if it concluded that Collins or “another participant” — i.e., someone other than Crowe— had the specific intent to kill.[4] In accor *693 dance with Brown, those instructions were erroneous, and this error requires reversal of Crowe’s convictions.[5] See Brown, 72 So.3d at 720.
For the foregoing reasons, the circuit court’s judgment is reversed, and the case is remanded for proceedings consistent with this opinion.[6]
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. Crowe was originally indicted in January 2010 (CC-2010-10). The State sought and received a superseding indictment in October 2010. On motion of the State, the circuit court dismissed the original indictment in July 2011.

. Crowe preserved this issue by timely objecting to the instructions on this basis. See Goins v. State, 521 So.2d 97, 98 (Ala.Crim. App.1987).

. In discussing the jury instructions, the following exchange occurred between the prosecutor and the Court:
"[PROSECUTOR]: We would ask that when you read the elements — specifically the capital charges — that if you read like the deceased is dead. The defendant or another participant caused the death of the decedent.
"THE COURT: And then when we go on down, do you want me to say the defendant or another participant intended to kill the deceased ?
"[PROSECUTOR]: Yes."
(R. 1645 (emphasis added).)

. In Russaw v. State, 572 So.2d 1288, 1293 (Ala. Crim.App. 1990), we found "the instructions of the trial court highly confusing because of the failure to clearly distinguish the *693 intent element in the crimes of capital murder, felony-murder, and murder in connection with the doctrine of accomplice liability.” In Russaw, we recognized the value of pattern jury instructions in circumstances like this case:
“A comparison of the charge given in this case with portions of the pattern jury instructions recommended by the Alabama Supreme Court reveals the glaring deficiencies of the jury instructions of the trial court.
" '[I]f you find that a murder of the intentional killing type of [the victim] was committed by some person ... other than the defendant, the defendant is guilty of that intentional killing type of murder if, but only if, you find beyond a reasonable doubt either that the defendant intentionally procured, induced or caused the other person ... to commit the murder, or that the defendant intentionally aided or abetted the other person's ... commission of the murder. Only if you are convinced beyond a reasonable doubt that either or both of those situations exist as a fact can you find the defendant guilty of an intentional killing murder which he did not personally commit himself. A defendant who is guilty of the crime of murder of the intentional killing type because of these principles has committed that crime the same as if he had personally done the killing himself.’ ”
Russaw, 572 So.2d at 1292-93 (Ala.Crim.App. 1990) (quoting Alabama Bar Institute for Continuing Legal Education, Proposed Pattern Jury Instructions for Use in the Guilt State of Capital Cases Tried Under Act No. 81-178, pp. 4-5, 15, approved and ‘‘recommended” by the Alabama Supreme Court December 6, 1982).

. We find unavailing the State’s arguments that other instructions from the circuit court' — notably, the instruction on voluntary intoxication and the general instruction regarding accomplice liability — cured or otherwise corrected the erroneous instructions in this case. Although the circuit court instructed the jury that voluntary intoxication could "negate the specific intent required for a murder conviction,” the erroneous instructions permitted the jury, even if it believed that voluntary intoxication negated Crowe's specific intent, to nevertheless convict Crowe if "another participant” had the requisite particularized intent.
As to the general accomplice-liability instruction given in this case, a substantially similar instruction was given in Brown, as the above-quoted instructions from Brown and this case indicate. Just as the accomplice-liability instruction in Brown did not cure the erroneous instructions regarding specific intent in that case, the accomplice-liability instruction given in the instant case did not cure the erroneous specific-intent instructions in Crowe's case.

. Because we are reversing Crowe’s convictions based on this guilt-phase issue, we do not address the remaining guilt-phase issues or the penalty-phase issues.