WELCH, Judge.
C.H. appeals from the judgment of the Jefferson Juvenile Court adjudicating him to be a delinquent based on the underlying charges of disorderly conduct and third-degree theft of property.[1] See §§ 13A-11-7 and 13A-8-5, Ala. Code 1975, respectively. C.H. was committed to the Department of Youth Services (“DYS”) for a period to be determined by DYS. This appeal followed.
Facts
On April 21, 2015, Officer Roddy Howell filed a delinquency petition alleging that C.H. committed third-degree theft of prop-, erty by knowingly obtaining or exerting unauthorized control over a pair of handcuffs owned by the City of Birmingham Police Department. (C. 6.) Officer Howell also filed a delinquency petition alleging disorderly conduct based on the allegation that C.H. “inten[ded] to cause [a] public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof,” when C.H. “engag[ed] in fighting or in violent tumultuous or threatening behavior” by running from the “police through a residential area” and thereby “causing residents to run into their homes in alarm.” (C. 7.)
On May 3, 2016, a hearing was conducted on the delinquency petitions. Officer Zachary Scott Osborn with the Birmingham Police Department was the sole witness, and he testified to the following.
On April 20, 2015, at approximately 10:00 p.m., Officer Osborn and his partner, Officer Howell, were on patrol in an area near the Tom Brown Village housing project in Birmingham. From their patrol vehicle, the officers determined that an automobile was displaying an incorrect license plate. After the officers activated the emergency lights on their patrol vehicle, the suspect automobile engaged in meas *654 ures to evade the police and then entered the Tom Brown Village housing project. Once the- vehicle was inside the.housing project, the individual seated in the passenger seat,.who was later identified as 17-year-old C.H., “bailed” out of the still-moving vehicle. (R. 6.) C.H. ran through the housing project, followed on foot first by Officer Osborn and then by Officer Howell, until C.H. fell and was apprehended by Officer Howell. C.H.’s hands were placed in handcuffs behind his back, and he was placed in the backseat of the officers’ police vehicle. C.H. requested that the windows of the vehicle be rolled down because he was very hot. C.H. “spontaneous[ly]” told the officers that he had run from them because he had had a pistol, but lost it somewhere while running from the officers. (R. 13.) Officers retraced the path of their chase with C.H. and found a loaded pistol near where C.H. had fallen. C.H. asked the officers how long he would be incarcerated, and the officers respo'nded that they did not know. Leaving C.H. in the patrol vehicle, the officers turned their attention to the driver of the automobile in which C.H. had been a passenger. When the officers returned to their vehicle, they discovered that C.H. had fled—while still handcuffed. C.H. was not apprehended the night he fled. Officer Osborn did not know when C.H. was apprehended, but he was not wearing the handcuffs when he was apprehended. The handcuffs were not recovered.. Officer Osborn stated that it cost officers $35.00 to replace the handcuffs.
At the conclusion .of the hearing, the juvenile court found the underlying charges to be true and adjudicated C.H. to be a delinquent on each charge.
Appeal
C.H. appealed challenging the sufficiency of the evidence to support his adjudications of delinquency based on the offenses of disorderly conduct and 'third-degree theft of property. In Ex parte Woodall, 730 So.2d 652 (Ala. 1998), the Alabama Supreme Court set forth the appropriate standard of review concerning the sufficiency of the evidence in criminal cases.
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by. the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr. App. 1984), aff'd, 471 So.2d 493 (Ala. 1985).’ Powe v. State, 597 So.2d 721, 724 (Ala. 1991). It. is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt. Pennington v. State, 421 So.2d 1361 (Ala.Cr.App. 1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App. 1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to . allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978) (emphasis original).”
730 So.2d at 658.
C.H. contends on appeal, as he did at the conclusion of the State’s case, that the State did not prove that he committed the offense of disorderly conduct. The State, on appeal, agrees with C.H.
C.H. was charged under § 13A-11-7, Ala. Code 1975, with disorderly conduct by
“doing any of the following with intent to eause public inconvenience, annoyance; or alarm, or recklessly creating a risk thereof: (X) engaging in fighting or in violent tumultuous or threatening behavior, to-wit: defendant ran from police *655 through a residential area causing] residents to run into their homes in alarm, in violation of section 13A-11-7, of the Code of Alabama 1975.”
(CR. 7.)
Disorderly conduct is defined.in § 13A-11—7(a)(1), Ala. Code 1975, as follows:
“(a) A person commits the crime of disorderly . conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
“(1) Engages in fighting or in violent tumultuous or threatening behavior.”
Officer Osborn testified at the delinquency hearing that even though it .was somewhat late in the evening, it was a hot evening and there were numerous individuals out and about at the time of the alleged offense. According to Officer Osborn “[i]t causes a certain amount of disturbance .., when you see a police ear and lights and someone running from the police and police officers chasing them. So, you know,' it tends to gain a crowd and, you know, all the factors.” (R. 8.) However, Officer Osborn testified that he did not “observe anything else about the people that were gathering and observing this situation.” (R. 8.) Moreover, on cross-examination, Officer Osborn testified that as he and Officer Howell pursued C.H. “within the housing project,” C.H. was not “engaging in fighting at that time,” Officer Osborn “[njever saw. violent, tumultuous behavior,” from C.H., and he “never saw threatening behavior from [C.H.] ” (R. 20.) Officer Osborn testified that all he saw was C.H. “just running.” (R. 20.)
The evidence presented at the delinquency hearing did not disclose that C.H. engaged in fighting or in violent, tumultuous, or threatening behavior. The State concedes on appeal, and the evidence confirms, that the juvenile court’s finding that C.H. was delinquent based on the offense of disorderly conduct is due to be reversed because the evidence is insufficient to support the charge.
C.H. contends on appeal, as he did in his motion for a judgment of acquittal, that the State failed to present a prima facie case of theft of property. Specifically, C.H. asserts on appeal, as he did in the juvenile court, that there was no evidence establishing the element of intent to commit a theft.
C.H. was charged as follows:
“[C.H.] did: (X) knowingly obtain or exert unauthorized control over the following- property,' to-wit: one pair of handcuffs, the property of, to-wit: Bir-. minghanr police dept., B’ham. AL, of the value of $35.00, with intent to deprive the owner of his dr her property; in violation of section 13A-008-005 of the Code of Alabama 1975.”
(CR. 6.)
Section 13A-8-2(1), Ala. Code 1975, defines “theft of property” .as “[a] person commits the crime, of theft of property if he ... [kjnowingly obtains or exerts unauthorized control over the property of another, with.intent to deprive the owner of his property.” Section 13A-8-5, Ala. Code 1975, defines third-degree theft of property as a theft which does not exceed $500 in value and the property is not taken from the person of another. Third-degree theft of property is a Class A misdemeanor.
The only issue before this Court is whether there was sufficient evidence to allow the' fact-finder to determine that C.H. intended to commit theft of property. This Court finds that there was sufficient evidence to establish intent to commit theft of property.
C.H. cites J.B. v. State, 6 So.3d 659 (Fla. Dist. Ct. App. 2009), as persuasive authority supporting a reversal of his theft conviction. J.B. ran away from an off-duty police *656 officer who had placed handcuffs on J.B. in an attempt to arrest J.B. A Florida circuit court adjudicated J.B. guilty of delinquency based on theft of the handcuffs. J.B. appealed. In reversing the conviction in the circuit court, the Florida District Court of Appeal set forth the following:
“A person commits theft if he or she knowingly obtains or uses another person’s property with the intent to temporarily or permanently: (a) deprive the other person of the right to use the property or benefit from the property or (b) appropriate the property for his or her own use. See § 812.014(1)(a)-(b), Fla. Stat. (2007). Further, because petit theft is a specific intent crime, see C.G. v. State, 981 So.2d 1224, 1225 (Fla. 1st DCA 2008), the State is required to prove that J.B. intended to deprive the officer of her right to use the handcuffs or benefit from them, or that he intended to appropriate the handcuffs for his own use.
“Here, the State presented evidence of J.B.’s intent to flee from the police officer. However, the State did not present any evidence that J.B. intended to steal the handcuffs or deprive the police officer of her property. Instead, J.B.’s act of taking the handcuffs was incidental to his flight from an officer’s unlawful arrest. Actually, we are sure that J.B. would have gladly relinquished any dominion, control, or possessory rights to the handcuffs if he only had the key to release them.
“Because the evidence was not sufficient to support the adjudication of delinquency, we reverse with instructions to dismiss the petit theft charge.”
J.B. v. State, 6 So.3d at 659-60.
This Court is not persuaded by the J.B. analysis. “A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his purpose is to cause that result or to engage in that conduct.” § 13A-2-2(1), Ala. Code 1975 (emphasis added). The specific intent required to support a conviction for theft may be proven by direct evidence or by circumstantial evidence. Smith v. State, 665 So.2d 1002 (Ala. Crim. App. 1995). “The question of a defendant’s intent at the time of the crime is usually an issue for the [trier of fact] to resolve.” Rowell v. State, 570 So.2d 848, 850 (Ala. Crim. App. 1990).
Here, the evidence before the trier of fact was that C.H. attempted to evade pursuing police officers because he was illegally in possession of a pistol. The officers apprehended, arrested, and placed C.H. in handcuffs. C.H. inquired about the length of his incarceration. He was placed in a police vehicle and when an opportunity arose, he fled from custody—while wearing the handcuffs. At some point before his apprehension, C.H. was able to remove the handcuffs, but he did not return them to the officer to whom they belonged. This Court believes that C.H. not returning the handcuffs to the owner at the time the handcuffs were removed from his wrists allowed the fact-finder to believe, that at that time, C.H. formed the intent to exert unauthorized control over the handcuffs and to deprive the officer of his property. Thus, this Court cannot find reversible error as to the adjudication based on theft of property.[2]
*657 Conclusion
The juvenile court’s judgment adjudicating C.H. delinquent based on the underlying offense of theft of property is affirmed. However, because the evidence was not sufficient to support finding that C.H. committed disorderly conduct, the judgment adjudicating him delinquent based on that underlying offense must be reversed and a judgment rendered in his favor.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
Windom, P.J., and Burke and Joiner, JJ., concur. Kellum, J., not sitting.

. C.H. was also found to have committed an attempt to escape from custody, § 13A-10-32, Ala. Code 1975, and possession of a pistol without a permit, § 13A-11-73, Ala. Code 1975; however, he did not challenge those adjudications.

. In Dedmon v. State, 478 S.W.2d 486 (Tex. Crim. App. 1972), Dedmon escaped from police custody while wearing an officer’s handcuffs. Dedmon was charged and convicted for the theft of the handcuffs. On appeal, the issue presented for appellate review was whether a theft was actually committed, because, Dedmon argued, he was in lawful possession of the handcuffs by virtue of the arresting officer placing the handcuffs on Dedmon. The Dedmon Court held that there was a theft of property because under the *657 relevant Texas statutes, an officer does not relinquish possession of his handcuffs by placing them on a suspect. The specific element of "intent” was not discussed in Dedmon.